## CRANFORD *v*. STATE.

## Opinion delivered November 27, 1922.

1. HOMICIDE—BURDEN OF PROOF.—In a prosecution of one jointly indicted with another for murder the burden was on the State to prove that defendant was a *particeps criminis* in the killing.

2. CRIMINAL LAW—PROVINCE OF JURY.—In a prosecution for murder, in which defendant was jointly indicted with another and there was evidence by defendant that he was with his co-defendant at the time of the killing, and that the codefendant did not kill deceased, and deceased's dying declaration implicated codefendant in the killing, it was within the jury's province to believe the dying declarations and to accept so much of defendant's statement as established his presence with his co-defendant.

3. CRIMINAL LAW—ARGUMENTATIVE INSTRUCTIONS.—It was proper to refuse instructions argumentative in form.

4. CRIMINAL LAW—REPETITION OF INSTRUCTIONS.—It was not error to refuse correct instructions when fully covered by instructions given.

5. CRIMINAL LAW—PRESUMPTION OF INNOCENCE.—One accused of crime is presumed to be innocent, and this presumption attends him throughout the trial as evidence in his favor, and entitles him to an acquittal unless the State adduces evidence which convinces the jury beyond a reasonable doubt that defendant is guilty.

6. CRIMINAL LAW—INSTRUCTION AS TO REASONABLE DOUBT.—In a prosecution for murder, an instruction that "reasonable doubt is not any possible or imaginary doubt hatched up for the purpose of an acquittal, because everything that depends upon human testimony is susceptible of some possible doubt, to be convinced beyond a reasonable doubt is that state of the case which, after entire consideration of the testimony, leaves the minds of the jurors in that condition that they feel an abiding conviction to a moral certainty of the truth of the charge," *held* correct.

7. CRIMINAL LAW—PRESUMPTION OF INNOCENCE—INSTRUCTIONS.—Correct instructions as to the burden of proof and reasonable doubt give the accused the benefit of the presumption of innocence.

Appeal from Newton Circuit Court; *J. M. Shinn,* Judge; affirmed.

*E. G. Mitchell,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

WOOD, J. The appellant, John Cranford, and Charlie Burns were jointly indicted by the grand jury of Newton County for the crime of murder in the first degree in the killing of one Lige Roberts. Burns was tried separately at a former term of the court and was convicted of murder in the first degree and sentenced to imprisonment for life in the State Penitentiary. He appealed to this court, and the judgment of the trial court was affirmed. *Burns* v. *State,* 145 Ark. 1. The facts and circumstances under which the killing occurred are fully set forth in that opinion, and it could serve no useful purpose to reiterate them here. Burns' connection with the killing was proved by the dying declarations of the deceased as follows: "I heard some one say, 'Now,' and then a gun fired, and Charlie Burns said 'G—— d—— him, I got him'." The deceased did not recognize the voice of the one who said "now," but his dying declaration shows that another was present. It was the theory of the State in the trial of Burns, and also its theory in the trial of appellant, that the appellant and Burns had formed a conspiracy to kill Roberts. The facts upon which the State relied to prove the conspiracy are substantially the same in the present case as they were in the case of *Burns* v. *State, supra.* The rulings of the court upon the objections to the admission of the testimony introduced by the State to prove the conspiracy in that case are controlling on the objections made to the introduction of testimony to prove the conspiracy in this case.

One of the principal grounds urged for reversal by learned counsel for appellant in his oral argument before the court was that there was no testimony whatever on the part of the State tending to connect the appellant with the commission of the crime. The burden was upon the State to prove that appellant was a *particeps criminis* in the killing of Roberts. This, it must be conceded, the

State failed to do by the dying declarations of Roberts or by any other direct evidence. The missing link in the dying declarations which fails to connect the appellant with Burns in the killing of Roberts, it occurs to us, has been supplied by other circumstances and the testimony of the appellant himself. In the dying declarations of the deceased he further stated, ''They aimed to kill me. They didn't think I would be able to come back to the house and tell who done it.' This tends to prove that there was more than one present when the shooting occurred. The deceased further said that he saw Charlie Burns and John Cranford on the porch at Sol Burns' house that evening before the shooting occurred that night.

Mrs. Grace Estepp, a witness for the State, testified that John Cranford and Charlie Burns were at her home on the afternoon before Roberts was killed that night. They had a gun with them on that occasion. They left her place, going toward the Cranford home.

Denver Cowan, a witness for the State, testified that he was at the Cranford home the night Lige Roberts was killed, and that he saw John Cranford and Charlie Burns together at the Cranford home on that occasion.

The appellant himself testified that he was on the porch at Sol Burns' home, with Charlie Burns, at the time Lige Roberts passed in the afternoon preceding the night of the killing of Roberts. He was with Charlie Burns in the Cranford home on Saturday night until about one-thirty o'clock Sunday morning, after which the appellant, Chester Burns, and others stayed with Charlie Burns until about sunup. In fact, the testimony of the appellant himself shows that he was in the immediate presence of Charlie Burns from early Saturday morning until Sunday morning at sunup, and he testified that he knew that Charlie Burns did not kill Lige Roberts because he was with Burns all the time, and that if Burns did the killing witness was with him.

Now the dying declarations of the deceased were sufficient to warrant the jury in finding that Burns killed

Lige Roberts, and these declarations were also sufficient to show that another was present, and since appellant himself testified that he was with Charlie Burns all the time during the night Roberts was killed, and knew that Burns did not kill him, it was within the province of the jury to believe, from Roberts' dying declarations, that Burns killed Roberts, and to accept appellant's statement that if Burns did kill Roberts he was with him, and to disbelieve him when he said that Burns did not kill Roberts.

The jury were the sole judges of the credibility of the witnesses and of the weight to be given their testimony. They had a right to say that appellant was swearing falsely when he testified that Burns was not present and did not kill Roberts on Saturday night, but that appellant was swearing the truth when he stated that he was with Burns all the time during the night Roberts was killed. Hence the jury had the right to conclude that appellant was present when Roberts was killed, and that he participated in the killing.

The appellant presented eleven separate prayers for instructions, which the court refused. Some of them were argumentative in form, and were therefore properly refused by the court. Such of these as were correct declarations of law were fully covered by instructions which the court gave. Counsel for appellant, in his oral argument, especially stressed as error the refusal of the court to give the prayer for instruction on the presumption of innocence. That prayer is as follows:

"11. The defendant is presumed to be innocent, and this presumption is not to be treated as an idle declaration of law. It clings to the defendant throughout the trial and within itself must cause you, under your oaths, to acquit the defendant and return a verdict of 'not guilty' unless overturned by proof sufficient, by its probative force, to convince you of his guilt beyond all reasonable doubt."

The court instructed the jury, in substance, that before they could convict the defendant they would have to

believe beyond a reasonable doubt that he killed Roberts, as charged in the indictment; that, if they had a reasonable doubt of his guilt, it was their duty to acquit him; that they must give the defendant the benefit of every reasonable doubt. The court then defined "reasonable doubt" as follows: "Reasonable doubt is not any possible or imaginary doubt hatched up for the purpose of an acquittal, because everything that depends upon human testimony is susceptible of some possible doubt. To be convinced beyond a reasonable doubt is that state of the case which, after entire consideration of the testimony, leaves the minds of the jurors in that condition that they feel an abiding conviction to a moral certainty of the truth of the charge."

The court further instructed the jury: "I instruct you that the indictment in this case is no evidence of defendant's guilt, and you will not consider it as evidence in the case, as it is only the means by which the defendant is brought into court to answer the charge against him."

The defendant is presumed to be innocent, and this presumption attends him throughout the trial as evidence in his favor, and entitles him to an acquittal unless the State adduces evidence which convinces the jury, beyond a reasonable doubt, that the defendant is guilty of the crime charged. The above plain declaration of law needs no wordy amplification to simplify it. No rule of law correctly expressed to which the defendant is entitled is to be treated as an idle declaration. That goes without saying. A rule of law so important to the accused as the presumption of innocence argues its own weight and significance to the jury. When the defendant undertakes to enlarge upon it by asking the court to tell the jury that "this presumption is not to be treated as an idle declaration of law * * * and within itself must cause you under your oaths to acquit," etc., the instruction assumes an argumentative form. By such form the accused seeks to have the court put undue emphasis upon the instruction on the presumption of innocence, and give it primacy

over other instructions. At least it occurs to us that such might be the dangerous implication. For instance, might not the jury say: "The court tells us in an instruction that the defendant is presumed to be innocent, and this presumption is not to be treated as an idle declaration of law. What about other instructions declaring rules for our guidance? Does the court mean to imply that they are idle declarations?" All of the instructions of the court are of equal importance, and, as we have said, none of them can be considered as idle declarations. The instruction being argumentative in form, it was not prejudicial error to refuse it. *Nordin* v. *State,* 143 Ark. 364; *Bolling* v. *State,* 54 Ark. 602.

Furthermore, we have set forth the instructions which the court gave on reasonable doubt, and the one to the effect that the indictment was only an accusation and not evidence against the accused. These instructions clearly show that the burden was put upon the State to prove the crime charged beyond a reasonable doubt, and reasonable doubt was correctly defined. In *Monk* v. *State,* 130 Ark. 364, we held that where the trial court fully and correctly instructed the jury on the subject of reasonable doubt, and told the jury to acquit the defendant if a reasonable doubt was entertained as to his guilt, it was not prejudicial error to refuse an instruction on the presump tion of innocence. Our holding in the Monk case, *supra,* is grounded upon the theory that the defendant is given the benefit of the presumption of innocence when the jury is told that he cannot be convicted unless the testimony convinces them beyond a reasonable doubt of his guilt. The rule of law above announced as to the presumption of innocence is firmly imbedded in the criminal jurisprudence of all most highly civilized nations. As is said by Associate Judge WHITE in *Coffin* v. *U. S.,* 156 U. S. 432-453: "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the ad-

ministration of our criminal law.'' The right to have this rule of law enforced is sacrosanct to every defendant accused of crime, and it cannot be denied him. Therefore, it is never error to grant the prayer of a defendant, properly framed, for an instruction applying the rule of law on the presumption of innocence, as above set forth. But, on the contrary, it is always prejudicial error to refuse it, unless the court has given other instructions on the burden of proof and reasonable doubt which are its equivalent. We thoroughly concur in the learned and exhaustive opinion of Judge WHITE in *Coffin* v. *U. S., supra,* which is indeed a classic pronouncement, except wherein he holds that a correct instruction on the burden of proof and reasonable doubt is not the equivalent of an instruction on the presumption of innocence. Instructions on the burden of proof and reasonable doubt, when couched in correct language, in legal effect, do give the accused the benefit of the presumption of innocence, as held by us in *Monk* v. *State, supra,* and cases there cited. To tell the jury that the burden of proof in the whole case is on the State to prove the defendant's guilt beyond a reasonable doubt, is but tantamount to telling them that the defendant, throughout the trial, is presumed to be innocent unless the State has proved him to be guilty beyond a reasonable doubt. In other words, such an instruction, in legal effect, clothes the defendant with the presumption of innocence which inures to his benefit as evidence in the trial and entitles him to an acquittal, unless it is overcome by evidence which convinces the jury beyond a reasonable doubt of his guilt.

The instructions on the burden of proof and reasonable doubt are accurately expressed. Finding no prejudicial error in the record, let the judgment be affirmed.