Key, Armer, Kerr and Key *v.* State.

4513                                214 S. W. 2d 234

Opinion delivered October 25, 1948.

*Creekmore & Robinson* and *Rains & Rains,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

Griffin Smith, Chief Justice. Appellants were found guilty of stealing a hog. From prison sentences of one year each they have appealed on the grounds (a) that the proof was insufficient; (b) they were prejudiced by inadmissible evidence; (c) a demurrer to the information should have been sustained, and (d) eleven jurors were permitted to convene on the second day of trial during absence of the twelfth.

The hog appropriated by the defendants was shot in an old field near the home of T. J. Jones, who claimed the animal. Much testimony was directed to identification of the defendants as the persons engaged in the unlawful enterprise, but consideration of this evidence is eliminated with admissions by all that they were participants in the physical acts complained of.

In claiming to own the hog, Earl Armer testified he had ascertained it was ranging near Jones' home, and that he asked Doyle Kerr and Milford and Arthur Key to drive with him to the place in question. The actual shooting was done by Kerr, who acted for Armer. All defended on the ground they believed Armer when he told them the hog was his and that he had a right to its possession.

Armer testified that six or eight months before the cases were tried he had lived in the Uniontown community, but in moving elsewhere he left a hog. It had been purchased from his brother, Clyman, at Short, Oklahoma. When asked when the hog was acquired he replied, "Around a year." Clyman Armer testified that the deal spoken of by his brother occurred "About two years ago." At another point in his testimony Earl Armer said the hog he left at Uniontown was eighteen months old.

Deputy Sheriff Bill Yancy arrested Armer and Milford Key at 5105 Myer St., Fort Smith, where the hog was being butchered in the kitchen. The head and "hide" were found about fifty feet from a highway along which the defendants had traveled. The ears had been removed.

By its verdict the jury found that Armer did not own the hog, and that neither he nor the other defendants acted in good faith. We cannot say the evidence (some of which is not set out) was not sufficient to sustain the convictions.

Arthur Key was asked, on cross-examination, if he had ever stolen a hog. Over objection by counsel the witness was told to answer, with directions to the jury that any response by the witness would be considered only

in determining his credibility. Other similar questions were asked, with like rulings by the Court. The following occurred:

By Counsel: "The defendants now move the Court that all the testimony in regard to other crimes be stricken from the record, and the jury instructed not to consider it". The Court: "Gentlemen of the Jury, you will not give this testimony any consideration".

No objection was made that the ruling was insufficient, hence the error complained of is not properly before us in the sense urged by appellants.

The information charged that the four defendants —naming them—while in Crawford County, committed larceny January 9th, 1948, by willfully and feloniously taking, stealing, and carrying away one hog, the personal property of T. J. Jones. Although value of the hog was not alleged, the act was designated a felony and grand larceny. This was sufficient under Sec. 22 of Initiated Act No. 3, 4 Ark. Stats. 43-1006. The State, upon appropriate motion by the defendant, must file a bill of particulars. In the case at bar deficiencies of the information were not particularized. The transcript shows a statement by the Court March 15th to the effect that "the defendants demurred in short on the record." The demurrer was overruled. This was not error.

Finally it is urged that in permitting the eleven jurors to retire to a room before the twelfth member arrived, the defendants' substantive rights were impaired and a mistrial should have been declared. Record indorsements are:

Judge Kincannon: "When Court convened at nine o'clock eleven jurors were present. After deliberating thirty minutes yesterday they did not reach a verdict. The defendants are now present; and, as we need the courtroom for another case, the jurors may go to the jury room, but not to discuss or deliberate on a verdict until the twelfth juror arrives". It is further shown that the absent juror arrived "within two or three minutes after the jurors had gone to the room, and that he was sent to join his associates".

Counsel contend that a literal construction of the Court's directions did not prevent the jurors from discussing the guilt or innocence of the defendants, the inhibition being that they were "not to discuss or deliberate *on a verdict*". It is highly improbable that the eleven jurors, within the two or three minutes complained of, drew this fine sentence distinction. On the contrary, we think a fair construction of what the Judge said amounted to an admonition not to discuss the case.

Affirmed.