448

DAVID WEBB *v.* STATE OF ARKANSAS

5776                                          486 S.W. 2d 684

Opinion delivered November 20, 1972

*William C. McArthur,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, charged with the crime of robbery, was tried by the court without a jury, was found guilty, and was sentenced to imprison-

ment for 15 years. He relies upon two points for reversal.

First, at the beginning of the trial the deputy prosecutor, Frank Newell, stated to the court that the prosecuting witness, Paul R. Pierce, whose testimony was essential to the State's case, was unable to come to court. Newell explained that he had talked to Pierce earlier that morning. Pierce had said that, as a consequence of the beating to which he had been subjected in the course of the robbery, he was bedridden and could not sit up without suffocating. Pierce declined Newell's offer to send an ambulance for him, insisting that he was unable to leave his bed.

The trial judge, after an extended discussion of the matter with counsel, announced that if the attorneys could not arrive at a solution to the problem during a ten-minute recess, it would be necessary to go to the witness's home to take his testimony. After that recess, and further discussion, the record recites that "the Court, Counsel for the State and defendant, the defendant, and other persons went to 3409 Tatum . Street, where the following proceedings occurred:

"The Court: The time is 11:14. Let the record show that the proceedings were adjourned to 3409 Tatum. . . and that the defendant is present and all the spectators in the courtroom, at the time, are also present. The reason for the procedure is that the witness is bedridden and unable to attend Court, either by furnished transportation, which was offered, or by ambulance, a service which was also offered. At this time the State will proceed with trying the case."

Defense counsel then stated that he had a couple of motions. The first motion, granted by the court, was to place the witnesses under the rule. The second motion was "to enter my objections to this proceeding as being irregular, and I would like the objections to be shown." The court replied, "All right."

The testimony of the prosecuting witness was then taken, who described how he had been beaten and robbed by the accused and another man, after midnight, at a motel where the witness was on night duty. No questions were asked about Pierce's physical condition at the time of the hearing, except that in response to a question whether Pierce had worked at the motel or elsewhere since the robbery, Pierce replied: "No, sir, I haven't worked a day. I'm through, boy. I mean that." The rest of the proceedings, after the taking of Pierce's testimony, were completed in the courtroom.

The appellant insists that the court's action in adjourning the trial to the witness's home was reversible error. Upon that issue the case most nearly in point is *Mell* v. *State*, 133 Ark. 197, 202 S.W. 33, LRA 1918D, 480 (1918), which, though not cited by the appellant, has quite properly been brought to our attention by the Attorney General. There the trial court, over the defendant's objection, granted the State's motion to adjourn the case to a hotel to take the testimony of the prosecuting witness, who was too ill to leave the hotel. In finding reversible error we said:

> "The manifold mischiefs that might arise from permitting a court to assume a migratory character and travel from place to place in the same locality or even in the same town are manifest. It is apparent that courts are held to determine the rights of all who are properly brought before them; and that numerous cases are pending in the same court at the same time. It would detract from the majesty of the law, lessen the dignity of courts and cause trouble and injustice to litigants if the courts should be held at any other time or place than that provided by law. It follows therefore that the court erred in adjourning to the hotel to take the testimony of the prosecuting witness against the objection of the defendant."

We hold that the *Mell* case is not controlling in the case at bar, for there are two material points of distinction

between the cases. First, in *Mell* the defense promptly objected to the proposed adjournment to the hotel. Such a timely objection would afford the State an opportunity to present medical proof of the witness's condition, had such proof been deemed by the court to be necessary. In the case at bar, however, no objection was interposed until all those connected with the case, even including spectators, had arrived at the home of the witness. There defense counsel first succeeded in having other witnesses excluded from the room before making his second objection, that the proceeding was "irregular." Irregular it may have been, but our study of the record discloses no fact indicating that the procedure was actually prejudicial to the accused.

Secondly, here, unlike the situation in the *Mell* case, it was the defendant himself who, according to the uncontradicted statements in the record, was responsible for Pierce's inability to come to court. It is a fundamental principle of justice that one cannot take advantage of his own wrong. We have held that, even though the Constitution guarantees to the accused a speedy trial, he cannot complain when his own wrongful escape from custody prevents the State from bringing him to trial. *Merritt* v. *State*, 244 Ark. 921, 428 S.W. 2d 66 (1968). There the point at issue was the time of trial. Here it is the place of trial (or of some part of it). It would be an affront to justice for the law to allow a criminal, after having maimed, mutilated, and mangled his victim to the extent of disabling him from appearing at the courthouse, then to successfully contend that the victim's testimony could not be taken elsewhere without a violation of the offender's constitutional rights. (See also our opinion in *Bradshaw* v. *State*, 250 Ark. 135, 464 S.W. 2d 614 (1971), where we observed that a thief does not have a constitutional right to use the stolen funds to make bail when he is charged with the offense.)

The appellant's second point for reversal has to do with the admissibility of a tape recording of a confession made to a deputy prosecutor, Robert J. Brown, on the day after the offense was committed. The appellant

concedes that tape recordings are frequently admissible, but he makes two objections to the one that was heard by the trial judge in the court below.

First, it is insisted that the integrity of the tape was not established, because it was not kept under lock and key between the time it was made and the date of trial. We have held that great care must be shown in the preservation and identification of such exhibits as bullets, blood or urine samples, and the like. *Jones* v. *Forrest City*, 239 Ark. 211, 388 S.W. 2d 386 (1965). But the point here is that such exhibits are essentially so similar to other bullets, blood samples, etc., that the possibility of substitution is a real threat to the rights of the accused. No similar considerations exist with respect to the tape recording in the case at bar. Deputy prosecutor Brown listened to the tape and testified without contradiction that it was a true recording of his interview with the accused. That testimony established the admissibility of the tape recording.

Secondly, in the course of the taped interview the appellant, in response to questions, stated that he had been convicted of a felony—the possession of stolen property—and of unspecified misdemeanors. After the tape recording had been heard by the trial judge, the defense moved for its exclusion, on the ground that the references to other offenses were prejudicial. The court overruled the motion, stating that he could and would disregard that part of the confession.

We find no error. In jury cases we have frequently held that the introduction of improper evidence may be cured by a proper admonition to the jury to disregard it. *Key* v. *State*, 213 Ark. 978, 214 S.W. 2d 234 (1948); *Cross* v. *State*, 200 Ark. 1165, 143 S.W. 2d 530 (1940); *Lane* v. *State*, 171 Ark. 180, 283 S.W. 353 (1926). We are convinced that the trial judge, who is trained in the matter of weighing evidence impartially, is even better qualified than a juror to disregard incompetent testimony. Moreover, as a practical matter the exclusionary rule contended for by the appellant would be unworkable, for

the trial judge must hear the evidence in the first place to determine its admissibility.

Affirmed.

HARRIS, C.J., and FOGLEMAN and BYRD, JJ., concur.

JOHN A. FOGLEMAN, Justice, Concurring. I concur in the result because a timely objection was not made. As I understand the record, no objection was registered until the court, parties, attorneys and witnesses had reached the residence of the witness. I agree that a criminal should not be permitted to take advantage of his own wrong. The real issue in this case was whether defendant was the criminal. The state's attorney stated that the witness had identified the defendant in at least one judicial proceeding as the perpetrator of the crime, that the witness had been struck one time and, at the time of trial, was totally incapacitated and bedridden and seemed to think that his condition resulted from what had happened. Defendant's attorney only expressed reluctance about going to the home of the witness at that time and made no offer to controvert any statement made by the prosecuting attorney.

We have from time immemorial said that one charged with a crime is presumed to be innocent—that this presumption attends him throughout the trial as evidence in his favor until overcome by evidence sufficient to convince the trier of facts of his guilt beyond a reasonable doubt. *Kagen* v. *State,* 232 Ark. 189, 334 S.W. 2d 865; *Cranford* v. *State,* 156 Ark. 39, 245 S.W. 189; *Carlton* v. *State,* 109 Ark. 516, 161 S.W. 145.

If the statements of the prosecutor had been controverted by appellant in a timely manner and a timely objection made, I do not see how the trier of the facts could properly hold, without an evidentiary hearing of some sort, that the accused was responsible for the witness' inability to attend court without removing from the defendant the protective cloak of the presumption of innocence.

454

In any event, extreme care should be taken in these cases not to deprive a defendant of the right to a public trial guaranteed by Article 2, Section 10 of our Constitution. Since the record shows that "other persons" were present, the public trial requirements may have been met. See *Commonwealth* v. *Trinkle,* 279 Pa. 564, 124 A. 191 (1924). Appellant made no objection, indicating that the trial was not public, and the presence of these "other persons" may have been adequate. To say the least, removal of a trial from the regularly designated place for holding court should be discouraged and should never be done except in the case of extreme emergency.

I cannot accept the premises on which the majority relies on appellant's first point. I agree fully with the majority opinion on appellant's second point and would affirm the judgment.

I am authorized to state that Mr. Chief Justice Harris and Mr. Justice Byrd join in this opinion.