PURDY *v.* GLOVER.

4-5613 and 4-5786 (consolidated) 132 S. W. 2d 821

Opinion delivered November 6, 1939.

*Ben B. Williamson* and *Richardson & Richardson,* for appellants.

*Smith & Judkins* and *O. C. Blackford,* for appellees.

GRIFFIN SMITH, C. J. This appeal is from judgments of the circuit court ousting two municipal officers-designate from the positions they had sought in the April (1939) general election, and to which they had been certified.

A. B. Glover and J. E. Purdy were opposing candidates for mayor of Hoxie. Jim Smith, O. L. Davis, and W. C. Cloyd were candidates for marshal in the same election.

In the race for mayor 467 votes were cast. The number cast in the marshal's race was 471.

The election commissioners certified that Purdy had been elected mayor with a vote of 240, 227 having been cast for Glover. Davis was certified as having been elected marshal by a majority of 26, the vote being 164 to 138. The vote received by Cloyd was not an issue.

April 13 suits were filed in circuit court alleging election irregularities; that illegal votes had been cast; and that if the returns were purged of such illegal ballots the result, based upon valid returns, would show the election of Glover and Smith.

Demurrers were overruled, answers were filed, and trial was commenced May 22. It continued into the next day. A great deal of testimony was introduced touching upon the qualifications of voters whose ballots were questioned. A resume of this testimony would serve no useful purpose. Over objections of the defendants, the court ordered boxes containing the original and the duplicate ballots to be opened and contents checked.

Final judgments were that Glover had been elected mayor and Smith marshal, and ". . . the defendant, J. E. Purdy, [and the defendant, O. L. Davis, are] hereby ousted [from said offices"].

Although the record does not disclose an order of consolidation, the proceedings seem to have been treated as though consolidation had been directed, and the motion for a new trial is in the joint names of Purdy and Davis. Thirty assignments of alleged errors are brought forward, some of which have been abandoned, and others not urged. Finally, appellants state in their brief: "We therefore earnestly urge this court to reverse and remand this cause (1) on the ground that the ballots, original and duplicate, were shown to have lost their presumptive verity; and, further, were not affirmatively shown to be worthy of credit, but on the contrary were affirmatively shown to be unworthy of credit, and (2) the court erred in placing the burden on defendants to prove the eligibility of all voters whose names did not appear on the printed [official] list from Boas township."

Appellants also seek clarification of the question of jurisdiction.

*First.* Appellants insist that the court erred in not directing verdicts for the defendants at the conclusion of testimony tending to show that parties who had voted were ineligible. The point was made that even if those in question had in fact voted, the evidence did not disclose the candidates for whom such ballots had been cast; that this could only be determined by opening the boxes; that the integrity of the ballots had been destroyed because of the manner of handling the boxes.

Appellants rely upon *Horne* v. *Fish,* 198 Ark. 79, 127 S. W. 2d 623, and the cases there cited, and upon *Henderson* v. *Gladish, ante,* p. 217, 128 S. W. 2d 257.

In the Fish case it was held that the ballot boxes had not lost their integrity, although irregularities had occurred, and although the method of sealing provided by law had not been followed. There is this significant observation in the opinion: ". . . this contest has taken the usual or conventional form of such contests, and [it may be said] that upon this appeal only the following matters are presented: (1) Did contestant W. A. Fish receive the highest number of legal votes cast in the August primary? (2) Was the contestee, J. M. Horne, who had been duly certified as the nominee, properly held to be ineligible to hold an office?" Later, the opinion says: "Admitting the full force of appellant's argument, we think it sufficient to say that it affirmatively appears that the integrity and purity of the ballots must be deemed as unimpeached."

Our conclusion in the instant case is the same. Although the strict letter of the law was not observed in depositing the ballot boxes, it is not shown or intimated that this was occasioned by anything but a lack of understanding of statutory requirements. Witnesses who testified with respect to the boxes either affirmed that the original seals had not been broken, or that they saw nothing to indicate such.

The Henderson-Gladish case does not sustain appellants' contention. The issue there was whether an elector whose poll tax receipt had been written with an indelible pencil was entitled to have his vote counted. This court was of the opinion that the taxpayer had the right,

prior to using his receipt, to compel the collector, by appropriate legal measures, to write such receipt with pen and ink. However, payment of the tax in a timely manner, it was held, entitled the elector to vote if other qualifications were present.

*Second.* The court did not err in placing the burden of proof upon appellants to show qualifications of voters whose names did not appear on the official list for Boas township. The record, as we construe it, shows that all of Hoxie was within the township in question, although the town did not include all of the territorial area of the township. The official list of poll taxpayers for Boas township was admissible to show, *prima facie,* what names constituted the electorate. *Hargis* v. *Hall, Secretary of State,* 196 Ark. 878, p. 888, 120 S. W. 2d 335, and cases there cited.

*Third.* An assignment argued in appellants' brief for the purpose of clarifying the law is that the trial court erred in holding that the proceedings were ordinary actions at law under Chapter 164 of Pope's Digest—the usurpation statute—beginning with § 14325. The applicable statute is § 14326 of Pope's Digest. See marginal note.[1]

*Ferguson* v. *Wolchansky,* 133 Ark. 516, 202 S. W. 826, is cited, emphasis being placed on that part of the opinion which says:

"Persons assuming to act under an election authorized by law have color of title to an office and are not usurpers within the meaning of the statute. . . . At any rate, it devolved on appellants in order to state a cause of action to allege that appellees were not acting under an election to office and were usurpers."

If we should consider the quoted part of the opinion, and disregard the remainder, certainly it would be necessary to concede that, if the circuit court in the instant case was without jurisdiction, the judgments of ouster are void.

---

1 Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise.

The controversy in the Wolchansky case was to determine who should serve as school directors in Desha county. Chief Justice McCULLOCH, speaking for the court, said: "The constitution confers authority upon the legislature to provide by law for the mode of contesting elections in cases not otherwise specifically provided for in the constitution itself. Art. 19, § 24. In exercise of that power the general assembly enacted a statute providing for contests in the county court of the election of 'any clerk of the circuit court, sheriff, coroner, county surveyor, county treasurer, county assessor, justice of the peace, constable, or any other county or township officer, the contest of which is not otherwise provided for.' [Pope's Digest, § 4837]. There is no other specific provision for the contest of the office of school director, and we think that that office is included within the designation of county offices within the meaning of the statute. This is confirmed by the fact that certain provisions of the school law require the returns of school elections in cities and towns to be made to the county clerk, who is required to deliver a certificate of election to the person elected. . . . Since the contest was not instituted in the court having jurisdiction of the subject-matter, the demurrer to the complaint was properly sustained."

In *State* v. *Sams*, 81 Ark. 39, 98 S. W. 955, Mr. Justice RIDDICK said for the court: "As the law does not expressly vest jurisdiction to hear and determine [controversies over the office of road overseer] in any other court, it falls within the general jurisdiction of the circuit court. The remedy for usurpation of office of road overseer is an action in that court brought either by the state or the person entitled to the office." See cases cited.

The Sams case was decided in 1906. It was an action by *quo warranto* brought by the attorney general. In 1910, in *Condren* v. *Gibbs*, 94 Ark. 478, 127 S. W. 731, it was held that the county court had jurisdiction of a contest for the office of township road overseer. The apparent inconsistency between the two decisions seems to be explained in the fact that in the Sams case the

state was the moving party, and the action was not, therefore, an election contest, since removal of a usurper, and not occupancy of the office by one claiming the franchise, was the issue.

Chief Justice McCulloch, in *Wood* v. *Miller*, 154 Ark. 318, 242 S. W. 573, held that a suit to recover a municipal office was properly brought in circuit court. In that case Wood was elected (April 6, 1920) for a two-year term. Miller was elected·in 1922 to succeed Wood. In November, 1920, Miller was elected representative from Jefferson county to the general assembly. Wood's contention was that Miller was ineligible to hold the municipal office because of his election to the general assembly, and that he (Wood) continued in office until his successor should be elected and had qualified. In the opinion the Chief Justice said: "Counsel for appellee rely on the decision in *Ferguson* v. *Wolchansky,* . . . but that case does not support the contention. That was a contest for the office of school director, and we held that it was a county office within the meaning of the statute conferring jurisdiction on the county court. We held, also, in *Condren* v. *Gibbs,* . . . that a road overseer was a county officer, and that a contest for that office fell within the jurisdiction of the county court. The case of *Lucas* v. *Futrell,* 84 Ark. 540, 106 S. W. 667, is also decisive of appellant's right under the statute to bring this action."

Again, the same Chief Justice, speaking for the court in *State* v. *Tyson,* 161 Ark. 42, 255 S. W. 289, said: "In *Payne* v. *Rittman,* 66 Ark. 201, 49 S. W. 814, [and in] *Whittaker* v. *Watson,* 68 Ark. 555, 60 S. W. 652, it was decided that contests over municipal offices were within the usurpation statute, for the·reason that they were not county offices within the meaning of the constitution. It results therefore that this action [in the Clark circuit court] challenging the right of appellee to hold office of town marshal comes within the usurpation statute and must be governed by its terms." It was held, however, that the particular action would not lie because it was brought by the prosecuting attorney. Citing the Sams case, the opinion continues: "Except in the case of

county officers, suit must be instituted by the attorney general.''

The result of these cases seems to be that where jurisdiction, with respect to claims to public office, is not expressly or by necessary implication placed elsewhere, the circuit court, under the constitution, has residuary jurisdiction, and such is true with respect to the case at bar. It is immaterial whether the actions be termed election contests, proceedings in the nature of *quo warranto*, or suits to oust usurpers. In either event they were triable by the circuit court.

Appellants conclude their brief with a request that the judgments be reversed and the causes remanded, and say: ''Upon remand secondary evidence can be offered to establish for whom all illegal votes were cast.'' This is tantamount to a request that the circuit court be permitted to again try the causes. While jurisdiction cannot be conferred by consent, objections to particular formalities in a court having jurisdiction may be waived.

Our conclusion is that the circuit court had before it sufficient evidence of a substantial nature upon which to predicate its findings that appellees received enough legal votes to elect them.

The judgments are affirmed.

In cause No. 5613 Purdy and Davis superseded judgments of the circuit court, a copy of the supersedeas bond having been filed with the clerk of this court. The bond is for costs only. The writ of supersedeas is dissolved. Judgment is rendered here in favor of appellees for such costs against appellants and their sureties.