Billy Bob LOYD *v.* Raymond KEATHLEY, Jr.

84-152                                   682 S.W.2d 739

Supreme Court of Arkansas
Opinion delivered January 21, 1985

*McHenry & Skipper,* by: *Robert McHenry,* for appellant.

*Callis L. Childs,* for appellee.

GEORGE ROSE SMITH, Justice. This is an election contest. The results of the 1983 election for school director in the Mt. Vernon School District were certified as 175 votes for Loyd, 169 for Keathley, and 31 for Brady. Keathley filed this contest. After an extended hearing the circuit court excluded 14 votes for Loyd because the voters did not sign the applications for the absentee ballots, 8 votes for Loyd because the voters were not residents of the district, and 1 vote for Loyd for a reason not now important. After the exclusion of a total of 23 votes for Loyd, the circuit judge declared Keathley the winner by a vote of 169 to 152. The judgment placed him in office. Our jurisdiction of the appeal is under Rule 29(1)(g). Five points for reversal are argued.

First, the 14 absentee votes. In each instance the county clerk permitted a person other than the voter to pick up the absentee ballot and sign the application for it. Amendment 51, however, sought to minimize fraud in absentee voting by requiring in Section 6 that the voter sign the affidavit of registration and in Section 13 that the voter's signature on an absentee application be determined by comparison to be identical with his signature on the affidavit. That constitutional safeguard is undoubtedly important. *Martin* v. *Hefley,* 259 Ark. 484, 533 S.W.2d 521 (1976). Since the procedure followed in this election would have nullified the

constitutional safeguard, the trial court was right in excluding the 14 absentee votes.

Second, the eight votes by nonresidents. The appellant concedes that the trial court was right as to five of these. When those are added to the invalid absentee votes, and the resulting total of 19 is subtracted from appellant's certified vote of 175, leaving him with only 156, the other four disputed votes need not be considered, for they could not change the result.

Third, it is argued that the county clerk and the election commissioners should have been joined, as necessary parties, within 20 days after the election. The appellant cites no authority on this exact point, only general statements such as the language of Civil Procedure Rule 19 (a). We perceive no reason for joining the clerk and commissioners, for complete relief can be accorded in their absence. *See* Rule 19 (a), *supra*. Furthermore, the appellant has demonstrated no prejudice suffered by him as a result of their omission as parties defendant.

Fourth, it is insisted that the trial court should not have sustained the plaintiff's motion asking that, because the defendant had not pleaded, within the 20 days allowed for his answer, any irregularities nullifying specific votes for the plaintiff, he not be allowed to introduce proof of such irregularities. When the motion was granted, defense counsel stated he had the names of several people who would have testified, but he did not give further details. A definite proffer is essential for appellate review. "[T]here must be a proffer of the evidence that is improperly excluded for us to find error." *Parker* v. *State*, 268 Ark. 441, 597 S.W. 2d 586 (1980). Otherwise we might order a new trial that proves to be useless because the appellant cannot in fact produce admissible proof to support his contention.

Fifth, the trial court's judgment declared the appellee to be the winner of the election and placed him in office. The appellate makes the novel contention that under Ark. Stat. Ann. § 3-1007 (Repl. 1976) the court's power to enter judgment was limited to ousting Loyd, the apparent

winner, from the office of school director, leaving a vacancy to be filled as provided by law. Under the school law the vacancy would be filled by the other directors. Ark. Stat. Ann. § 80-504 (Repl. 1980).

We cannot sustain the appellant's contention, and not merely because it proposes an innovation contrary to our traditional practice of putting the actual winner in office. *Bradley* v. *Jones,* 227 Ark. 574, 300 S.W.2d 1 (1957); *Purdy* v. *Glover,* 199 Ark. 63, 132 S.W.2d 821 (1939); *Dodd* v. *Gower,* 188 Ark. 958, 68 S.W.2d 463 (1934). The proposed innovation would also be unwise and unjust for at least three reasons: (1) The true winner would be deprived of the office for which he had campaigned successfully. (2) The power of the people to put the person of their choice into office would be nullified for no reason. (3) There would be no real incentive for a defeated candidate to undertake a costly election contest even though his proof was overwhelming, for his victory would be hollow.

We think it clear that the appellant misinterprets the legislative intent underlying the language of the statutes. Act 465 of 1969 was a comprehensive election code superseding many existing laws. Article 10 of that code consists of seven sections that are pertinent to this case. Sections 1 to 7; Ark. Stat. Ann. §§ 3-1001 to 3-1007. The appellant is relying solely on Section 3-1007. That view is too narrow.

This case is a typical election contest between two candidates qualified to hold he office. The only issue is which one received more valid votes. Such a contest is governed solely by the first four sections of Article 10. Section 3-1001 fixes the venue, specifies the court in which the contest is to be filed, and limits the time for filing the pleadings. The next two sections give extraordinary precedence to such cases and provide for special judges, Section 3-1004 dispenses with the need for a jury, empowers the circuit judge to enter judgment enforcing the proper certification of the result, and directs the supreme court to advance the hearing of any appeal. Those four sections contain all the details needed to enable the courts to handle cases such as this one, a simple election contest.

By contrast, the next three sections of Article 10 apply to a different situation — that in which an ineligible candidate is obstensibly elected. Section 3-1005 permits any ten reputable citizens to file a complaint alleging the casting of illegal or fraudulant votes, the making of fraudulent returns or certifications, or violations of the Corrupt Practice Article. A grand jury is to be called at once. Indictments must be speedily tried. By Section 3-1006 if the successful candidate in a primary is found guilty of violations he is deprived of the nomination. Finally, Section 3-1007 provides if the criminal proceedings are not finally determined until after the primary or general election, at which the miscreant has apparently emerged as the winner, the judgment is to operate as a forfeiture of his nomination or an ouster from office, as the case may be. That situation is not presented by the case at bar.

The appellant is mistaken in arguing that two cases decided under an earlier statute apply to this case. *Robinson v. Knowlton,* 183 Ark. 1127, 40 S.W. 2d 450 (1931); *Cain v. CarlLee,* 169 Ark. 887, 277 S.W. 551 (1925). In those cases there was a contest of a primary election, but the contest was not finally decided until the party nominee had also won the general election. We merely pointed out that if the contestant had won the contest, the winner of the general election would have been ousted as not having been the rightful party nominee, but the constestant, not having been a candidate in the general election, would not be entitled to the office. Again, that situation is not presented by the case at bar.

Affirmed, the mandate to issue immediately.