Ida Mae ALLEN *v.* Orlando David BURTON

92-251                                    843 S.W.2d 821

Supreme Court of Arkansas
Opinion delivered December 7, 1992

*Huckabay, Munson, Rowlett & Tilley, P.A.*, for appellant.

*Gary Eubanks & Associates*, by: *James Gerara Schulze* and *Darryl E. Baker*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Ida Mae Allen, raises three points for reversal of a verdict and judgment against her in the amount of $300,000, resulting from a vehicular collision and injury to the appellee, Orlando David Burton. None of the points has merit, and we affirm.

On March 17, 1990, Ida Mae Allen and Orlando David Burton, were traveling separately on Highway 65 near Pine Bluff. Both parties were southbound. The portion of Highway 65 involved has five lanes — two southbound, two northbound, and one center turning lane. Allen was driving a car in the inside lane a short distance behind Burton, who was driving a motorcycle in the outside lane. Allen's husband was a passenger in her car. Burton had a friend riding on the back of his motorcycle.

What happened next is disputed by the parties. According to Allen, she first observed Burton pulling into the outside lane from the shoulder of the highway. His right signal light was on, she said. Once he was in the outside lane, he did not turn off the right-turn signal, which remained on until the accident, according to Allen. She further stated that she was in the inside southbound lane behind Burton, while he was in the outside lane. As the front of her car began to come even with the front of Burton's motorcycle, he turned left directly in front of her. She applied her brakes, struck the motorcycle, and ended up in the northbound lane headed toward a ditch.

Burton's version of the incident was altogether different. He denied ever having been on the highway shoulder. Instead, he testified that he was attempting to turn into an intersection to get into the northbound lane of Highway 65 when the accident occurred:

> Well, when I put my signal light on and looked in my mirror, I saw I had time to change to the center lane, so I changed. And I was driving very slowly in this lane so I could find an intersection so I could get off and turn around and go back. And as I saw an intersection that I could turn left into, when I got ready to turn, I put my signal light on and checked my mirrors. When I got — as soon as I went into my turn to get into the turn lane, then I was just hit from my left. The car behind me just ran into me.

Burton lost his left foot and a portion of his left leg because of the accident. He filed suit against Allen. Allen, in response, pled that Burton was under the influence of alcohol and was negligent, which proximately caused his own injuries. Following a jury trial, the verdict of $300,000 was rendered.

## I. AMI INSTRUCTION 902

Allen argues for her first point that AMI Instruction 902 was improperly given over her objection because it did not identify a specific purpose for which the superior vehicle could use the highway. The instruction read to the jury was as follows:

> Now, when two vehicles are traveling in the same direction, the vehicle in front has the superior right to the use of the highway [for any proper purpose] and the driver behind must use ordinary care to operate his vehicle in recognition of this superior right. Now, this does not relieve the driver of the forward vehicle of the duty to use ordinary care and to obey the rules of the road. (Brackets ours.)

Apparently, before the jury retired to reach its verdict, Allen objected to AMI 902. However, no record of the objection was made. After the jury went out, the trial court stated that counsel could make his objection for the record "just as if it had come prior to our giving it to the jury." Allen's counsel then stated the objection:

> Your Honor, the defendant objects generally and specifically [to] the court's giving AMI 902 specifically named instruction number 13 having to do with the — having to do with the superior right of the forward vehicle in that I do not think this case presents the unique set of facts that the framers of the AMIs anticipated by the use of this instruction. Specifically, we have here an alleged change of lane situation, and I do not think that the instruction as given, or even generally or otherwise was proper under the circumstances.

The trial court then asked Burton's counsel for a reply, and this colloquy ensued:

> BURTON'S COUNSEL: Your Honor, just to be sure the record is clear on Mr. Huckabay's objection, 902 goes to the giving of the instruction generally, not for the language that we inserted in the instruction or used the term "for proper purposes" rather than saying, "for purposes of turning through an intersection," over such language . . . Mr. Huckabay's objection is to

the . . . instruction [being given] at all, not the language of the instruction.

ALLEN'S COUNSEL: Your Honor, I believe what I said was what I said.

BURTON'S COUNSEL: Well, I understand. . . . I just wanted to be sure that when the brief time comes —

ALLEN'S COUNSEL: I have nothing more to say other than what I said. . . .

BURTON'S COUNSEL: Well . . . I know what we said back in chambers, and I just wanted to be sure that —

ALLEN'S COUNSEL: And I don't think my instruction violated anything we said in chambers. Now, I [am] simply telling you what I objected to, and I think it's pretty clear.

The trial court then ruled that though the proof was in conflict, there was some proof that Burton had completed a lane change and was the forward vehicle and that AMI 902 was appropriate.

■ We have held that the failure to insert a specific purpose in the bracketed portion of AMI 902 is error. *Harlan* v. *Cubro*, 250 Ark. 610, 446 S.W.2d 459 (1971). However, it is clear in this case that Allen objected to the propriety of the AMI 902 instruction under the facts of this case and not to the absence of a precise purpose set out in the AMI 902 brackets. It is further clear that she has raised the argument of lack of a precise purpose in AMI 902 for the first time on appeal. It is axiomatic that Allen was required to object distinctly and specifically to any deficiency in AMI 902 as given. Ark. R. Civ. P. 51; *see also Nichols* v. *State*, 306 Ark. 417, 815 S.W.2d 382 (1991). No such objection appears of record. Rather, Allen argued that this was a change-of-lane case, and the superior-vehicle instruction was not applicable. We have consistently held that a party cannot make a new argument on appeal. *See, e.g., Mobbs* v. *State*, 307 Ark. 505, 821 S.W.2d 769 (1991). Because the objection concerning a specific purpose in AMI 902 was not raised below, we will not consider it for the first time on appeal.

■ We note on this point that a verbatim record of Allen's

objection to AMI 902 was not made when the objection was first brought to the trial court's attention. This violates our Administrative Order No. 4, effective July 1, 1991, which states:

> Unless waived on the record by the parties, it shall be the duty of any circuit, chancery, or probate court to require that a verbatim record be made of all proceedings pertaining to any contested matter before it.

It puts this court at a considerable disadvantage in reviewing points pertaining to unrecorded hearings, when a verbatim record is not before us. Clearly, what is recollected after the jury retires may have gaps and may be disputed by the participants.

## II. ALCOHOL DEFENSE

Allen next argues three points pertaining to Burton's consumption of alcohol before the incident. The first point deals with whether she proffered an exhibit marked number seven in a timely manner. The exhibit involved is a hospital record made during Burton's hospital stay with a handwritten notation: "Pt. refused to sign blood alcohol consent form @ 1735 h. as requested by State Trooper present in room. State Trooper removed pt.'s driver's license from pt.'s wallet @ 1737 h."

As in the case of the first issue, there was no recorded hearing relating to the admissibility of Exhibit 7 until after the jury began its deliberations. Apparently, however, a pretrial hearing was held on the various exhibits and witnesses to be presented by the parties. Allen asserts that the trial court denied admission of her exhibit, over her objection, at that time. The trial court's memory of those events, which was recorded after the jury had retired, was different:

> And, at that time, five of the six documents, as I recall, were reluctantly agreed to by plaintiff's counsel that were admissible although . . . plaintiff's counsel did not waive his right to object to them if he felt [that] tactically and strategically he should do it at that time. It never dawned on me that Mr. Huckabay would not offer the sixth document for the Court's ruling at the proper time in the course [of] the trial. I did, however, indicate I felt like there was probably a more valid objection to that document

[than to] any of the other ones. And at such time as the trial proceeded to that point when Mr. Huckabay offered the other five documents, the sixth one was not offered and has not been until this time.[1]

Allen's counsel and the trial court plainly have a disagreement over what transpired at the pretrial hearing regarding this exhibit. The trial court, however, was definite that he had not ruled on its admissibility.

██ A proffer of an exhibit is essential to appellant review. *See, e.g., Loyd* v. *Keathley*, 284 Ark. 391, 682 S.W.2d 739 (1985). That an exhibit must be offered into evidence before the taking of proof has concluded is self-evident. Here, the trial court stated that Exhibit 7 was neither offered as evidence nor proffered before the jury retired. The court, as a consequence, never had occasion to rule on the matter. A proffer of evidence is appropriate after the trial court has denied its admissibility. The trial court stated, though, that a denial never took place, and we give that statement credence. The Court of Appeals has stated that the trial court has great discretion as to the time when a proffer of proof may be made. *Sitz* v. *State*, 23 Ark. App. 126, 743 S.W.2d 18 (1988). We cannot say that the trial court abused that discretion in refusing to consider the contested exhibit after the jury had retired to consider its verdict.

The second issue concerns a comment by the trial court during voir dire. Burton's counsel advised the jury panel that Burton would testify that he had consumed two beers before the accident. Counsel then inquired whether the fact that Burton had drunk any beer at all would cause any juror to decide that Burton should not prevail. Three prospective jurors indicated affirmative responses, and they were excused for cause.

█ Additional jury panel members were called forward and questioned about possible prejudices against persons who ride motorcycles. The trial court returned to the subject of alcohol, inquiring:

Would the fact that some alcohol was involved [affect

---

[1] The sixth document referred to by the trial court is the disputed Exhibit 7.

your decision]? Now, nobody has indicated that there was likely to be any proof that there was a quantity of alcohol sufficient to cause any of the laws of this state to be broken or anything like that.

At that point, Allen's attorney requested a bench conference, and the proceedings were recessed. Out of the presence of the panel, he objected to the trial court's alleged comment on the evidence that there would be no evidence that Burton was intoxicated. After some conversation, the trial court suggested the plausibility of such an instruction, and Allen's attorney interrupted and said:

That's fine. My — just wanted the Court to know I would not have done anything so bizarre as to have the jury excused for this objection, but that I thought, as I remember what the Court said, that was the reason for my objection.

By taking this position, Allen conceded that a mistrial was not warranted which precludes a claim of error on that aspect on appeal. *See Mine Creek Contractors, Inc.* v. *Grandstaff*, 300 Ark. 516, 520, 780 S.W.2d 543, 544 (1989). The remaining question then is whether it was incumbent upon Allen to pursue the remedy of a cautionary instruction which she appeared to agree to.

■ We think that it was. We have held that the burden is on the complaining party to request such an instruction. *See Matkin* v. *Jones*, 260 Ark. 731, 543 S.W.2d 764 (1976). It is further the complaining party's burden to assure that the instruction is given, if the party is serious about curing asserted error. Allen did not do so, although her attorney had previously requested that course of action. She cannot now complain about its absence on appeal.

For her final point relating to alcohol, Allen contends that the trial court committed error in allowing Burton's counsel to state in closing argument: "There is no competent evidence this man was intoxicated." Allen hinges her argument on the court's disallowance of Exhibit 7 relating to Burton's refusal to permit a blood test for alcohol and urges that this exhibit would have constituted competent evidence of intoxication. As we have already indicated, Allen proffered this exhibit too late.

■ In addition, we view the statement by Burton's counsel

as argument — not evidence. There was ample proof before the jury that Burton had consumed three or four beers and half a pint of whiskey before the accident. Burton contested these facts and argued that there was no proof that he was drunk. We do not believe that Allen's case was prejudiced by this remark in closing argument.

### III. JUROR COERCION

The jury retired to deliberate at 4:58 p.m. They returned to the courtroom at 6:40 p.m. because of difficulty in reaching a verdict. Allen's attorney indicated that the judge might wish to inquire "not as to their numerical standing" but if they were deadlocked. He added that if they were, the court should give them the dynamite instruction. The trial court stated that it would not inquire about where they actually stood. When the jurors had been reseated, the court addressed them:

> Okay. I've been told by the bailiff that . . . it's been reported to him that the jury has been unable to arrive at a verdict in this matter. Without telling me how you stand in terms of for or against the defendant, could you tell me numerically if the split is six to six or nine to three — or well, not nine to three because if it was nine to three you'd have a verdict. . . . But without telling me again which side is for, can you give me an idea of where the vote seems to stand if you've taken a vote.

> JURY FOREMAN: Yes, sir. It is about eight to four.

> THE COURT: About eight to four? Okay. Ladies and gentlemen, I have previously instructed you, of course you understand that it takes only nine to arrive on a verdict. I want to make sure you understand that to start with. Sometimes I wonder if folks really understand.

The court then gave AMI 2303, the "dynamite instruction," which encourages a verdict. The court added that the jury should "give it the good ole college try" and make a reasonable effort to harmonize its views. Allen offered no objection to any of the foregoing. The jury then went back to their deliberations and returned with a verdict in Burton's favor in fairly short order at 7:12 p.m. The verdict was agreed to by nine jurors.

■ We have said in a criminal case that an inquiry into numerical standing, though not commendable, might be done in such a way as not to constitute error. *See Hopes v. State*, 294 Ark. 319, 742 S.W.2d 561 (1988), *citing Murchison v. State*, 153 Ark. 300, 240 S.W. 402 (1922). Here, we discern no coercive motive on the part of the trial court. Indeed, the court repeated that in reaching a verdict jurors should not give up their individual convictions. The critical factor here, though, is Allen did not follow-up on his misgivings about a request for numerical standing or object when the trial court asked for the numerical split and added its comments. An appellant may not complain on appeal of an erroneous action of a trial court, if he acquiesced in that action or failed to object. *Daniels v. Cravens*, 297 Ark. 388, 761 S.W.2d 942 (1988).

Affirmed.