Lisa BINNS, Richard Grasby, & Ron Oliver, Members of the Pulaski County Election Commission; Pat Tedford, Pulaski County Treasurer; Martin Gipson *v.* Ray C. HECK, Sr.

95-250                                   908 S.W.2d 328

Supreme Court of Arkansas
Opinion delivered October 30, 1995

*Nelwyn Davis*, Pulaski County Attorney, *Pamela D. Walker*, Ass't County Att'y, and *Karla Burnett*, Staff Attorney, for appellant Pulaski County Election Commission.

*Hilburn, Calhoon, Harper, Pruniski & Calhoon, Ltd.*, by: *Sam Hilburn, Susan Gordon Gunter*, and *Randy L. Grice*, for appellants.

*John T. Harmon* and *Job Serebrov*, for appellee.

ANDREE LAYTON ROAF, Justice. This case involves an election contest. Appellant Martin Gipson defeated appellee Ray C. Heck Sr. for the position of Alderman of Ward One of North Little Rock. The appellee contested the election, filing suit against Gipson, the Pulaski County Election Commission and its members, and the Pulaski County Treasurer. The trial court ordered the Election Commission to hold a new election. On appeal, appellant Martin Gipson asserts the trial court erred in (1) failing to dismiss appellee's petition requesting a new election, (2) denying his motion for directed verdict, and (3) ordering a new election. However, because Mr. Gipson's notice of appeal is not in the record filed with this court, we do not consider his arguments. Appellant, the Pulaski County Election Commission, contends the trial court erred in ordering a new election. We agree that the trial court was without authority to order a new election; we reverse the order and dismiss the appellee's action.

The election at issue was held on November 8, 1994; appellant Gipson defeated appellee Heck by 43 votes. On November 17, 1994, Heck filed a complaint in the Circuit Court of Pulaski

County alleging that at precinct 518H at least 75 of the first 381 persons who cast ballots in the Ward One alderman's race were residents of Ward Four. He further alleged the results for precinct 518H were 377 votes for him and 286 votes for Gipson, that he had contacted some of the persons who cast the illegal votes and that they indicated they cast their votes for Gipson. He asserted if all illegally cast ballots were removed, he would receive the majority of legally cast votes for Ward One, and should therefore be certified as the duly elected Alderman for Ward One.

The Pulaski County Election Commission and the County Treasurer answered, admitting that 65 voters who resided in Ward Four received ballots for the Ward One election. The Election Commission further asserted the complaint should be dismissed pursuant to ARCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted because, based upon the assumption that the 65 invalidated voters voted in the same proportion as the other ballots cast, the plaintiff would still lose the election.

At a hearing held on December 29, 1994, the trial court entered an agreed order which stipulated that volunteers at precinct 518H mistakenly gave Ward One ballots to 65 Ward Four voters and directed the Pulaski County Election Commission to find the ballot stubs, set aside the 65 illegal ballots, and recount the remaining votes cast in precinct 518H. The order further provided that "The parties agree that if the Election Commission is unable to match a ballot with its stub, such ballot will not be set aside, but will be counted, and the inability to match such ballot to the stub will in no way invalidate this Consent Order and the agreement set forth herein by the parties to resolve this dispute."

When the Election Commission could not locate the precinct 518H ballots, Heck filed a pleading entitled "Petition" in which he contended that he was entitled to another election. The trial court ultimately ordered the Election Commission to open all the ballot boxes from the November 8, 1991, general election to search for the missing Precinct 518H ballots. The Election Commission subsequently found the ballot stubs, but the ballots from precinct 518H were not located.

Finally, on February 27, 1995, the trial court entered an order directing the Election Commission to hold a new election

in precinct 518H, in the Ward One alderman's race between Heck and Gipson. In his findings of fact, the trial judge stated that a "search of all the boxes on February 13 and 14, 1995, produced none of the missing ballots from Precinct 518H." The trial court further stated "the integrity of the ballot box in Precinct 518H has been destroyed."

### a. Gipson's Notice of Appeal

The Election Commission timely filed a notice of appeal on March 1, 1995, and it is included in the record. A notice of appeal is attached as Exhibit 3 to Gipson's brief on appeal, indicating his notice was also timely filed in circuit court, but this notice of appeal is not in the record filed with this court. Gipson's notice of appeal is also on file in the Supreme Court Clerk's office with a letter notifying the Clerk of Gipson's appearance. A footnote in Gipson's brief concedes the record failed to contain the notice of appeal, but Gipson asserts "a request has been made to the Circuit Clerk to supplement the transcript by including" the notice.

In any event, Gipson's notice of appeal is not in the record, and there is no motion by Gipson to supplement the record with the notice of appeal. *See Edwards* v. *Neuse*, 312 Ark. 302, 849 S.W.2d 479 (1993). Although the appellee does not raise the issue, we have stated that while some irregularities in the form of a timely notice of appeal do not deprive the appellate court of jurisdiction, the failure to give the notice in a timely manner is fatal to an appeal. *Rossi v. Rossi*, 319 Ark. 373, 892 S.W.2d 246 (1995). Consequently, we are without jurisdiction to address Gipson's points on appeal because the record does not indicate he filed a timely notice of appeal. *Id.* Further, although the Election Commission's notice is timely and two or more parties may file a joint or consolidated appeal, the notice of appeal must "specify the party or parties taking the appeal" and only the Election Commission is named as appellant in its notice. Ark. R. App. P. 3(e); *Ozark Acoustical Contractors* v. *National Bank of Commerce*, 301 Ark. 472, 786 S.W.2d 813 (1990).

### b. Appeal of Election Commission

The Election Commission contends the trial court erred in ordering a new election because of the total failure of proof. At

trial, appellant Gipson moved for a directed verdict based upon a complete failure of proof, and the Election Commission joined in this motion, asserting Heck presented no evidence of how the challenged 65 votes were cast or if they were even cast in the Ward One race.

The trial court's consent order dated December 29, 1994, provides that at precinct 518H, Ward One ballots were given to 65 Ward Four voters. At trial, Heck testified the Election Commission could not locate the ballots from precinct 518H. However, he presented no testimony concerning whether any of the Ward Four voters actually voted in the Ward One alderman election and, if so, for whom they voted.

In his complaint, Heck asserted that he "contacted some of the persons who cast illegal votes . . . and they have indicated that they cast their vote for Defendant Gipson." Heck further alleged that following the removal of all illegally cast ballots, he would "receive the majority of legally cast votes for Alderman, Ward 1, City of North Little Rock and should therefore be certified as the duly elected Alderman for Ward 1, City of North Little Rock."

We have stated that "a pleading which merely alleges the conclusion that the contestant received more legal votes than the contestee without alleging facts which would disclose that the result of the election was actually different from that shown by the returns does not state a cause of action." *Files* v. *Hill*, 268 Ark. 106, 594 S.W.2d 836 (1980). In *Jones* v. *Etheridge*, 242 Ark. 907, 416 S.W.2d 306 (1967), the Court wrote:

> It places no burden on contestants to require them to state the names of the voters who allegedly voted "wet" and illegally and to show that if alleged illegal votes were purged it would change the election results. Before one can in good faith contest an election, he must have knowledge of the persons who voted illegally, some knowledge of how the persons allegedly voted, and he must be able to show that if the votes were purged it would make a difference in the outcome of the election. Otherwise, an election contest would become a fishing expedition. An election by the people should not be so lightly impugned by those who

only hope to find enough information to change the result of an election.

*See also Simonetti* v. *Brick*, 266 Ark. 551, 587 S.W.2d 16 (1979).

■ The appellee offered no evidence at trial of how the illegal votes were cast, and his complaint simply alleged that "some" of the people he contacted indicated they cast their vote for Gipson. In an election contest, official election returns are considered *prima facie* correct and the party contesting the election bears the burden of offering proof to set aside the results of the election. *Phillips* v. *Earngey*, 321 Ark. 476, 902 S.W.2d 982 (1995). Further, there is a presumption that all votes cast at the election were lawful until their authenticity is impeached by affirmative evidence. *Id.* Here, Heck simply failed to present proof that any of the 65 voters in question actually voted in the Ward One race, or that they voted for Gipson. *See Forrest* v. *Baker*, 287 Ark. 239, 698 S.W.2d 497 (1985).

■ The Election Commission also argues Arkansas election law does not provide for a new election as a remedy. Recently, we examined a comparable case. In *Phillips* v. *Earngey, supra,* Louise Berry died prior to the election, but she defeated Bill Earngey by one vote for the position of alderman for the City of Eureka Springs. Earngey filed a complaint alleging that more than 30 ineligible voters voted in the alderman's election and that "all or a majority" of the illegal voters voted for Louise Berry. After granting a "joint motion" to set aside the election results, the trial court ordered the Carroll County Election Commission to conduct a special election for alderman. We held the trial court erred and stated:

> The Board of Election Commissioners has no power to call or hold a new election and for the court to direct it to do so would be to confer a power that does not exist. *See McFarlin* v. *Kelly, supra; McCoy* v. *Story*, 243 Ark. 1, 417 S.W.2d 954; *Langston* v. *Johnson*, 255 Ark. 933, 504 S.W. 2d 349. Furthermore, it is the function of the legislature, not the courts, to create rights of action, or provide relief where means of redress have not been designated. *McFarlin* v. *Kelly, supra.*

(quoting *Files* v. *Hill*, 268 Ark. 106, 594 S.W.2d 836 (1980).)

The circuit court in the instant case erred in directing the Pulaski County Election Commission to hold an election in precinct 518H, in the Ward One alderman's race between Heck and Gipson. The only issue involved in an election contest between two candidates qualified to hold the office is which one received more valid votes. *Loyd* v. *Keathley*, 284 Ark. 391, 682 S.W.2d 739 (1985). In essence, the circuit court is required to simply examine the election results, and, after excluding any challenged votes which are illegal, determine which candidate received more valid votes. *See Forrest* v. *Baker*, 287 Ark. 239, 698 S.W.2d 497 (1985); *Loyd* v. *Keathley*, 284 Ark. 391, 682 S.W.2d 739 (1985); *Simonetti* v. *Brick*, 266 Ark. 551, 587 S.W.2d 16 (1979). Once again, Heck failed to present proof that any of the 65 voters in question voted for Gipson; therefore, Heck's action should have been dismissed.

Reversed and dismissed.

Special Justice JUDITH DeSIMONE joins in this opinion.

CORBIN, J., not participating.