Jack Ray HOPES *v.* STATE of Arkansas

CR 87-183                                    742 S.W.2d 561

Supreme Court of Arkansas
Opinion delivered January 19, 1988
[Rehearing denied February 22, 1988.]

*Jeff Rosenzweig*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Jack Ray Hopes, was convicted of second degree murder and sentenced to five years imprisonment. He raises two points of appeal. First, he contends the court erred in refusing an instruction he proffered. The instruction would have defined "dwelling" as including the curtilage in the context of the statute permitting the use of deadly force in self-defense without retreat in one's dwelling. We find no error, as the instruction proffered was not a correct statement of the law. The second allegation is that the judge erred by recalling the jurors to the courtroom during their deliberation and inquiring as to the numerical division of their vote at that time. We find the judge's actions were neither coercive of the jury, as the appellant contends, nor otherwise prejudicial. The conviction is affirmed.

Hopes and Gary Roper, the victim, were neighbors. They lived in a duplex; Hopes on one side apartment and Roper on the other. Each side, or apartment, had a separate front porch. Hopes testified that he was unloading his roofing equipment from his truck at the end of a work day when Roper arrived at the duplex. Roper called him a "punk," and Hopes responded by saying they should try to get along, whereupon Roper, who was standing on his front porch, spat on Hopes, who was standing on the porch on his side of the building. Hopes tried to spit on Roper, but could not spit far enough. Hopes testified that Roper then told him to wait while he went into his apartment. Roper came out of his apartment with a gun and was coming across to Hope's front porch firing the gun.

Hopes said he (Hopes) carried a gun because of having to carry large amounts of money in his business. He removed the gun from his side and fired at Roper. He then went to Roper's body and struck Roper once with the gun.

The testimony of an associate state medical examiner showed that Roper's body was shot in thirteen places. Police testimony showed that when Hope's gun was recovered it was bent, and a part had to be straightened in order to perform

ballistics tests. Another witness testified he saw Hopes raising his hand above "someone" and bringing it down twice, as if to strike the body, after the shooting.

Hopes did not deny the shooting when the police arrived at the scene. He took them inside his apartment and gave them his semi-automatic pistol. Another pistol, which was apparently the one used by Roper, was found outside. It contained one shell from which the bullet had been fired and one from which the bullet had not been fired.

### Self-defense

The defense of justification or self-defense using deadly force is the subject of Ark. Code Ann. § 5-2-607 (1987) which provides, in pertinent part:

> (a) A person is justified in using deadly physical force upon another person if he reasonably believes that the other person is:
>
> (1) Committing or about to commit a felony involving force or violence; or
>
> (2) Using or about to use unlawful deadly physical force.
>
> (b) A person may not use deadly physical force in self-defense if he knows that he can avoid the necessity of using that force with complete safety:
>
> (1) By retreating, except that a person is not required to retreat if he is in his dwelling and was not the original aggressor, . . . .

On the basis of the evidence raising this statutory defense, Hopes asked that the following instruction be given:

> "Dwelling" means a space that is used or intended to be used on a temporary or permanent basis as a human habitation, home, or residence, and includes what is known as the curtilage, which is the space, necessary and convenient and habitually used for the family purposes and the carrying on of domestic employments.

That proffered instruction was refused, and the court instead

gave the following definition of "dwelling" found in AMCI 4105: " 'Dwelling' means an enclosed space that is used or intended to be used, on a temporary or permanent basis, as a human habitation, home or residence; . . . ."

■ Hopes's argument on this point has two parts. He first contends that a front porch qualifies as a dwelling and the court erred in failing so to instruct the jury. He cites no authority supporting the conclusion that a porch should be considered the same as a "dwelling." We have found *State* v. *Bonano*, 59 N.J. 515, 284 A.2d 345 (1971), in which the New Jersey Supreme Court held that a defendant who stood in his doorway was entitled to retreat no further and said:

> At this time, however, we limit our acceptance of this rule to those cases where the defendant is actually in his dwelling house. A porch or other similar physical appurtenance is deemed to come with the concept. [284 A.2d at 347]

In that opinion, however, it appears that the court was dealing with common law retreat doctrine rather than with a statute like ours. While we find no evidence that the porch in this case was "enclosed" or so constructed as to be even temporarily "habitable," we need not make any such decision. No instruction to the effect that a porch is a dwelling was proffered. The trial court is not required to give a specific instruction that is not requested. *Schwindling* v. *State*, 269 Ark. 388, 602 S.W.2d 639 (1980).

■ The next part of the argument concerns the failure to give the proffered instruction defining "dwelling" as inclusive of the curtilage. In *David* v. *State*, 286 Ark. 205, 691 S.W.2d 133 (1985), we rejected the argument that the word "dwelling" in our self-defense statute included the curtilage. We said the statute ". . . defines 'dwelling' as an enclosed space that is used or intended to be used, on a temporary or permanent basis, as a human habitation, home or residence. The AMCI instruction represents an accurate statement of the Arkansas law [286 Ark. at 213, 691 S.W.2d at 140]." Hopes recognizes that decision, but asserts that the *David* case involved a shooting in a yard rather than on a porch. Had he wished the trial court to consider whether, as a matter of law, a porch is part of a dwelling and thus a place where one may use deadly physical force in self-defense

without retreating, we say again Hopes should have sought such an instruction rather than raise the matter on appeal for the first time.

Hopes cites Ark. Code Ann. § 5-2-620 (1987), which was adopted by the general assembly in 1981, for his assertion that we should so liberalize our interpretation of our self-defense statute as to say his actions were justified. That statute provides:

> (a) The right of an individual to defend himself and the lives of persons or property in his home against harm, injury, or loss by persons unlawfully entering or attempting to enter or intrude thereupon is reaffirmed as a fundamental right to be preserved and promoted as a public policy in this state.

> (b) There shall be a legal presumption that any force or means used to accomplish such purpose was exercised in a lawful and necessary manner, unless that presumption is overcome by clear and convincing evidence to the contrary.

> (c) The above-stated public policy shall be strictly complied with by the courts, and appropriate instructions thereof shall be given to juries sitting in trial of criminal charges brought in connection therewith.

In *Doles* v. *State*, 280 Ark. 299, 657 S.W.2d 538 (1983), we discussed § 5-2-620 and concluded that there is a legal presumption that deadly force used in self-defense in one's own home is justified unless overcome by clear and convincing evidence. The comment to AMCI 4105 discusses the statute and points out that it has no real effect, as the state must prove guilt beyond a reasonable doubt and that the "clear and convincing evidence" standard for overcoming the presumption adds nothing to the state's burden. *See also Clark* v. *State*, 15 Ark. App. 393, 695 S.W.2d 396 (1985). As far as this statute may implicate the basic right to defend without retreat, we note that it says a person may exercise that right "in his home," and that is consistent with § 5-2-607(b)(1) and AMCI 4105.

Hopes cites *Sanders* v. *State*, 264 Ark. 434, 572 S.W.2d 397 (1978), in which we held that property located on one's person, at one's residence, or within the curtilage surrounding the residence may not be seized without a warrant. He does not explain,

however, how the right to be free of seizure of property without a warrant is connected to the right to use deadly force in self-defense. Even if there were a satisfactory explanation and inspired case precedent for it, we doubt that it would be sufficient to overcome the statutory limitation on the right of self-defense. At least one other state has held that the common law right to use deadly force in self-defense does not extend to the curtilage, *State v. Gardner*, 606 S.W.2d 236 (Mo. Ct. App. 1980), and at least one has held that it does, *State v. Bottenfield*, 692 S.W.2d 447 (Tenn. Crim. App. 1985). We note, however, that those opinions referred to no statutory definition or other constraints.

The trial court did not err in declining the proffered instruction to the effect that "dwelling" included the curtilage, and it did not err in failing to instruct that the "dwelling" included the porch.

### The judge and the jury

The jury began its deliberations at 3:25 p.m. Apparently there was some discussion off the record of calling the jurors back into the courtroom to ascertain their progress. At 6:05 p.m., the record shows a statement by Hopes's counsel objecting to the court making an inquiry of the jurors. At 6:10 p.m., the jurors were returned to the courtroom, and the judge asked the foreman to tell him how the jury was divided, by number only, without revealing the preferences represented by the numbers. He wished to know only, for example, if the jury was divided seven to five without being told which way the seven or the five had voted. The foreman reported they were ten to two. The judge then asked them to return to the jury room and to decide whether they wished to continue deliberations into the evening or to stop and begin afresh the next morning. The jurors returned to the jury room and deliberated for more than an hour after which they adjourned for the night.

Hopes contends that this conduct by the judge was prejudicially coercive of the jurors. He cites *Tarry v. State*, 289 Ark. 193, 710 S.W.2d 202 (1986); *Williams v. State*, 264 Ark. 77, 568 S.W.2d 30 (1978); and *Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86 (1971). In those cases we held that Ark. Code Ann. § 16-89-125(3)(e) had been violated and that the violations consti-

tuted error. Section 16-89-125(3)(e) provides that the judge, in responding to a question by the jurors, must bring them into the courtroom in the presence of, or with notice to, counsel. That section does not apply to the point made by Hopes here. Neither does Ark. R. Crim. P. 33.4 which deals with recalling the jurors for the purpose of giving additional instructions.

In *Murchison* v. *State*, 153 Ark. 300, 240 S.W. 402 (1922), we stated that, while the practice of inquiring how the jurors stand numerically is not commendable, it may be done in such a way as to not constitute error. *See also Eady* v. *State*, 168 Ark. 731, 271 S.W. 338 (1925).

It is obvious to us that the judge's concern in this case was motivated by the approaching dinner hour and his consideration of the comfort of the jurors, court personnel, counsel, and others who could not or would not wish to leave the vicinity of the court while deliberations continued. In *Beale* v. *United States*, 263 F.2d 215 (5th Cir. 1959), the judge conducted an inquiry similar to the one conducted in this case. The court of appeals said: "While we think it clear that the better practice is to avoid making such inquiries, it is equally clear here that the trial judge was actuated by solicitude for the jury, to arrange a suitable luncheon hour, and not by a desire to pry into or influence their deliberation."

We find no error. While we again say it is not a proper practice to inquire of the jurors how they may stand numerically, the manner of the inquiry made here demonstrated no coercive motive on the part of the judge, and nothing in the record shows that Hopes was prejudiced in any way by it.

Affirmed.