Randy L. ANDERSON *v.* STATE of Arkansas

CR 01-1131 108 S.W.3d 592

Supreme Court of Arkansas
Opinion delivered May 29, 2003
[Petition for rehearing denied July 3, 2003.*]

---

\* CORBIN, J., not participating.

388

*Perroni & James Law Firm*, by: *Samuel A. Perroni* and *Janan Arnold Davis*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Randy Landon Anderson was tried and convicted of the capital murder of John Clark "Pete" Emmerson, Jr., and sentenced to death. Appellant states five points on appeal, one of which is that there is no evidence the jury considered a stipulated mitigating factor in the sentencing phase of the trial. Because we find that prejudicial error occurred on this point, we reverse and remand the case for

resentencing. Our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2002).

On June 1, 2000, Pete's estranged wife, Lauren Jasay Emmerson, her brother, Ricky Jasay, and two other friends, Randy Busti and Christopher Floriani, gathered at appellant's house to drink and shoot pool. Lauren also took some prescription medicine for muscle spasms and anxiety. When the combination of pills and alcohol caused her to pass out early in the evening, appellant put her to bed in his bedroom. Their relationship, however, was not romantic. Later that evening, Pete started spinning his pickup truck around in the field next to appellant's house. It was then that appellant went inside the house and brought out a shotgun. One witness heard him say, "[w]e got three options. I've got this gun and I got this knife or we can compromise." Pete drove away, heading toward his father's house; but, later he was seen running down the road because he had run out of gas. Appellant offered to give him some gas, so the two men went to appellant's shed and returned with a plastic jug. At that point, Pete started asking Ricky if his estranged wife, Lauren, was inside appellant's trailer. When Ricky would not respond, appellant intervened and told Pete that Ricky did not have to tell him anything. According to one witness, Pete jumped up, shook his finger in appellant's face and shouted: "Look, Randy, this ain't concerning you. It's between me and Rick. I just want to know if Lauren is inside. I want to talk to her."

Prior to the night of June 1, 2000, appellant had been told about Pete making threats against him because Pete assumed that appellant was having an affair with Lauren. Appellant also testified that two days earlier Pete had come over to his house and threatened to "kill me if he ever caught me with his wife." In relating the events that occurred on the night of the shooting, appellant testified as follows: Pete's argument with Ricky resumed after he told appellant to stay out of his business. Pete threatened to kill "every MF in here if I have to," and he tried to get into the house to see Lauren. Appellant barred him from getting into the house because he did not know what Pete would do to Lauren if he found her passed out on appellant's bed. Pete then called appellant out to the yard to fight. Appellant picked up his shotgun

and followed Pete out to the driveway. When Pete turned suddenly and rushed him, appellant pulled the trigger. He could not remember firing the second shot, but he did remember moving the body because he was afraid Pete's father would see the body and kill him.

Barbara Snow testified that she and her boyfriend, Dale Adams, were in bed on the evening of the shooting incident when she received a call from appellant. Barbara rode with Dale to appellant's trailer. When they pulled up, she saw a large puddle of blood near the driveway. She recounted several statements that appellant made that night: "He said that he shot him in the, I mean, in the chest one time. And he said he was moaning and he said, 'I finished him off. I shot him in the head.'" Barbara also testified to hearing the following conversation between appellant and her boyfriend, Dale: "[appellant] asked Dale, he said, 'What to you think I'll get for this?' Dale said, 'Man, twenty years or better.' He said, 'I can do twenty.' . . . [H]e picked up a knife and he said, 'I can say he was coming after me and he, you know, it was self-defense.'"

Investigating officers testified that the body had been dragged almost fifty feet from the original place where the blood was found. Police found a folded pocketknife and glasses near the blood. The medical examiner confirmed that the victim was shot once in the stomach and once in the back of the head at a range of three to ten feet. According to the medical examiner, Pete would have lived three or four minutes had he not been shot the second time.

Sheriff Floyd White testified about Pete's tendency to become "turbulent" when he drank. Randy Busti testified that the pocketknife found with the glasses near the pool of blood looked like one he had seen near Pete earlier that day. Ricky Jasay also saw a knife in Pete's hand as he came up on the porch. Roger Amick, a psychiatrist, testified that the autopsy revealed Pete was intoxicated and had been drinking just before being shot.[1] Amick pointed out that Pete's emotional controls were impaired and his actions were unpredictable.

---

[1] Laboratory test results showed a blood alcohol level of 0.20%.

On appeal, appellant does not challenge the sufficiency of the evidence to support the jury's verdict in the guilt phase. Instead, he raises the following points on appeal: (1) ineffective assistance of counsel; (2) the circuit court erred by allowing the prosecutor to misstate the law and shift the burden of proof during voir dire, and by allowing a jury organized to return a verdict of death; (3) the circuit court erred in refusing proffered jury instructions on justification; (4) the evidence is insufficient to support the jury's finding of a statutory aggravating circumstance; and (5) the circuit court erred in imposing the death penalty when the jury failed to follow the statutory procedures during the sentencing phase and ignored a stipulated mitigating factor.

The State, in its examination of the record, pursuant to Ark. Sup. Ct. R. 4-3(h) (2002), determined that the circuit court violated Ark. Code Ann. § 16-89-125(c) (1987), by communicating with the jury other than in open court. During the jury's sentencing-phase deliberations, the court received a note from the jury containing one question. The court responded in writing with an answer that both the State and appellant agreed was the correct response to the jury's question. The State asserts it has rebutted the presumption of prejudice that arises from a violation of § 16-89-125(c), because the record reflects the substance of the circuit court's communication with the jury, appellant never objected to that substance, and the court never had any contact with the jury during deliberations. *Atkinson v. State*, 374 Ark. 336, 64 S.W.3d 259 (2002). We agree.

### I. *Shifting the Burden of Proof During Voir Dire*

██ ██ Appellant maintains on appeal that the prosecutor repeatedly violated the parameters and purposes of voir dire. Specifically, he contends that the prosecutor improperly shifted the burden of proof such that the court had an obligation to intervene and correctly instruct the potential jurors. We note at the outset that we hold prosecuting attorneys to a high standard because the State's attorney acts in a quasi-judicial capacity, and it is the prosecutor's duty to use fair, honorable, reasonable, and lawful means to secure a conviction in a fair and impartial trial. *Williams v. State*, 294 Ark. 345, 742 S.W.2d 932 (1988); *Garza v. State*, 293 Ark.

175, 735 S.W.2d 702 (1987); *Floyd v. State*, 278 Ark. 342, 645 S.W.2d 690 (1983); *Mays v. State*, 264 Ark. 353, 571 S.W.2d 429 (1978). We will not reverse the action of a trial court in matters pertaining to its control, supervision, and determination of the propriety of arguments of counsel in the absence of manifest abuse of discretion. *Cook v. State*, 316 Ark. 384, 386-87, 872 S.W.2d 72, 73 (1994). Generally, such an error may be cured by a remedial instruction from the court. *Id.* (holding that "[a]t most, it was an attempt to shift the burden of proof, and we cannot say that the trial court erred in determining that *the instruction [at the time] remedied that wrong.*" (emphasis added)).

Before we can examine the prosecutor's comments, we must consider whether the issue is properly before this court. The defense attorney did not object to the prosecutor's comments at the time, and a contemporaneous objection is generally required to preserve an issue for appeal, even a constitutional issue. *Bader v. State*, 344 Ark. 241, 40 S.W.3d 738 (2001); *Christopher v. State*, 340 Ark. 404, 10 S.W.3d 852 (2000). However, we have recognized four exceptions to the contemporaneous–objection rule, commonly referred to as the *Wicks* exceptions. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). The four *Wicks* exceptions are (1) when the trial court fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) when defense counsel has no knowledge of the error and hence no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly; and (4) Ark. R. Evid. 103(d) provides that the appellate court is not precluded from taking notice of errors affecting substantial rights, although they were not brought to the attention of the trial court. *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002) (citing *Wicks v. State, supra*).

The issue in the instant case is the application of the third *Wicks* exception, that is, whether the prosecutor's comments during voir dire were "so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same." *Wicks*, 270 Ark. at 786, 606 S.W.2d at 370. Analysis of this issue requires us to

address three questions. First, whether appellant made a *Wicks* argument to this court. Second, if so, whether incorrect burden-of-proof statements made during voir dire were the type of remarks that would require intervention under the third *Wicks* exception. Third, whether the prosecutor's comments in the instant case were so prejudicial as to require reversal.

### Preservation of Wicks Argument

The threshold issue is whether appellant has even presented a *Wicks* argument to this court.[2] Appellant does not cite *Wicks* in either his initial brief or his reply brief; rather, it is the State's brief that expressly mentions and addresses the third *Wicks* exception. In framing this point on appeal, appellant contends the prosecutor's comments to the potential jurors during voir dire constituted such a serious error that the circuit court should have intervened and admonished the jury as to a correct statement of the law. Without specifically citing *Wicks*, appellant has effectively made the argument identified by this court as the third *Wicks* exception — the error is so flagrant and so highly prejudicial as to make it the duty of the court on its own motion to have the jury instructed correctly. Thus, the issue of a possible *Wicks* exception has been presented to this court in the instant appeal. Having concluded that the applicability of the third *Wicks* exception is properly before us, the question becomes whether there was a violation so fundamental as to require reversal.

### Applicability of the Third Wicks Exception to Incorrect Burden-of-Proof Statements .Made by the Prosecutor During Voir Dire

In the past we have only allowed.issues to be considered under the third *Wicks* exception where the error affected the very structure of the criminal trial. In *Calnan v. State*, this court considered what constituted waiver of a defendant's constitutional right to a jury

---

[2] While not applicable to the instant case, for all cases in which the death penalty is imposed on or after August 1, 2001, we are required to conduct a review of the guilt and sentencing phase of the trial considering seven issues even if not enumerated by the defendant on appeal. Ark. R. App. P.—Crim. 10 (2003). Four of the seven required issues to review are based on the *Wicks* exceptions. *Id.*

trial. 310 Ark. 744, 841 S.W.2d 593 (1992). The State contended that the issue was not preserved for appellate review because the defendant did not object at the circuit court level. *Id.* We stated that "[t]he third exception applies in this case. There need be no contemporaneous objection to raise an issue on appeal if otherwise a serious error will result." *Id.* at 748, 841 S.W.2d at 596.

On the same date that this court handed down *Calnan*, we also decided *Winkle v. State*, 310 Ark. 713, 841 S.W.2d 589 (1992). *Winkle* was similar to *Calnan* in that both were DWI cases, both involved the fundamental right to a jury trial, both considered the issue without a contemporaneous objection as *Wicks* three exceptions, and both reversed the trial court. *Id.* The holding in *Winkle* is instructive on the application of the third *Wicks* exception:

> The right to jury trial is part of the basic structure of our courts. Every judge, on his own motion, should accord such a basic right. In *Wicks v. State, supra*, we set out various exceptions to the contemporaneous objection rule, and we provided that the rule is not applicable when the trial court should intervene on its own motion to correct a serious error. This is such a serious error. The right to a trial by jury in a criminal case is a fundamental right of our jurisprudence and is recognized by the Magna Charta, the Declaration of Independence, the federal constitution, and our state constitution.

*Id.* at 717-18, 841 S.W.2d at 591.

In 1995, we considered an appellant's conviction for disorderly conduct that was tried before a six-member jury. *Grinning v. City of Pine Bluff*, 322 Ark. 45, 907 S.W.2d 690 (1995). Relying on *Winkle* and *Wicks*, this court reversed:

> In both cases, neither the appellants nor their counsel objected to the violation of their jury trial right. In *Winkle*, this court stated that denial of the right to trial by jury in a criminal case, without the requisite waiver in accordance with the law, is a serious error for which the trial court should intervene, and is therefore an exception to the contemporaneous objection rule. *Winkle*, 310 Ark. 713, 717, 841 S.W.2d 589, 591 (citing *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980)).

*Id.* at 49, 907 S.W.2d at 692. *Grinning* extended *Winkle* and *Calnan* by holding that the right to a jury trial included not only having a jury, but having a properly constituted jury with twelve members rather than only six. *Id.*

■ Our case law is clear that *Wicks* presents only narrow exceptions that are to be rarely applied. Specifically, the third *Wicks* exception has only been applied to cases in which a defendant's fundamental right to a trial by jury is at issue. *Calnan, supra; Winkle, supra; Grinning, supra.* The third *Wicks* exception has not been applied to consider possible prosecutorial errors in relation to cross examination, *Vaughn v. State*, 338 Ark. 220, 992 S.W.2d 785 (1999), to privileged testimony, *Hale v. State*, 343 Ark. 62, 31 S.W.3d 850 (2000), or closing arguments, *Buckley, supra* and *Greene v. State*, 343 Ark. 526, 37 S.W.3d 579 (2001). The issue here is whether prosecutorial misstatements during voir dire concerning the State's burden of proof rise to the level of a *Wicks-*three exception.

■ The United States Supreme Court recently addressed the significance of the right to a jury trial and proof beyond a reasonable doubt in criminal cases. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). After explaining that the right to a trial by jury is founded on centuries of common law, the Supreme Court stated:

> Equally well founded is the companion right to have the jury verdict based on proof beyond a reasonable doubt. "The 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula "beyond a reasonable doubt" seems to have occurred as late as 1798. It is now accepted in common law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.' C. McCormick, Evidence § 321, pp. 681-682 (1954); *see also* 9 J. Wigmore, Evidence § 2497 (3d ed.1940)." *Winship*, 397 U.S., at 361, 90 S.Ct. 1068. We went on to explain that the reliance on the "reasonable doubt" standard among common-law jurisdictions "'reflect[s] a profound judgment about the way in which law should be' enforced and justice administered.'" *Id.*, at 361-362, 90 S.Ct. 1068 (quoting *Duncan*, 391 U.S., at 155, 88 S.Ct. 1444).

*Apprendi v. New Jersey*, 530 U.S. at 478-79 (emphasis added). Furthermore, "the right to be judged by a standard of proof beyond a reasonable doubt in a criminal trial" is a fundamental right even though not expressly guaranteed in the Bill of Rights. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-80 (1980).

■ The State's burden of proof beyond a reasonable doubt is the only mechanism by which the State may overcome the presumption of innocence that surrounds a criminal defendant until and unless proven guilty.[3] In 1976, we reversed a conviction where the prosecutor, in closing arguments, stated that the defendant was lying to the court and jury. After an objection, the trial court admonished the jury and reminded them that the defendant had not testified. This court found reversible error because the prosecutor's statement "constituted error beyond doubt." We explained that the presumption of innocence and the State's burden of proof beyond a reasonable doubt attach when the defendant pleads not guilty.

> He had entered a plea of not guilty. By so doing, he availed himself of any defense and all matters of justification and excuse available under the law, which are not required to be specifically pleaded. He put all material facts alleged in the information in issue. Even the most patent truths were in issue. This plea was a continuing denial of every bit of evidence and every statement of every witness who testified against him. More importantly, he invoked his right to the presumption of his innocence and put the burden upon the state to prove his guilt beyond a reasonable doubt, as well as the right to remain silent in the hope that the jury would not be convinced of his guilt beyond a reasonable doubt.

*Williams v. State*, 259 Ark. 667, 672, 535 S.W.2d 842, 846 (1976) (citations omitted). We then penned the oft-quoted statement:

> The presumption of innocence is so strong that it serves an accused as evidence in his favor throughout the trial and entitles

---

[3] "After verdict of guilty and sentence by trial court, the presumption of innocence ceases, and the law then presumes that the proceedings were regular and conviction just." *Campbell v. State*, 300 Ark. 570, 576, 781 S.W.2d 14, 17 (1989) (citing *Attorney General v. Montgomery*, 275 Mich. 504, 267 N.W. 550, 554 (1936); *State v. Levi*, 153 S.E. 587 (W.Va. 1930); *State v. Jurgensen*, 280 N.W. 886 (Neb. 1938)).

> him to an acquittal unless the state adduces evidence which convinces the jury beyond a reasonable doubt that he is guilty of the crime charged. It is a fundamental right in the American system antedating any constitution and an essential of due process of law. It alone puts in issue the truth and credibility of all of the evidence offered against an accused.

*Id* at 672-73, 535 S.W.2d at 846. (citations omitted). *See, e.g., Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002).

 We have referred to the presumption of innocence and the State's burden of proof beyond a reasonable doubt as constitutional guarantees protecting every accused person being tried by a jury. *Rector v. State*, 280 Ark. 385, 396, 659 S.W.2d 168, 396 (1983). In a long line of cases, we have emphasized the inviolability of the presumption of innocence and the State's burden of proof. For example, in 1922, we stated:

> The law will not countenance any presumption, which by overcoming the presumption of innocence will cast the burden of proving his innocence upon the defendant. Hence, where presumptions apparently conflict, the law will recognize the presumption of innocence alone, and will impose no restriction on its operation, but will apply it to the whole scope of the charge, against the accused and to every fact essential to the crime.

*Gilcoat v. State*, 155 Ark. 455, 462, 244 S.W. 723, 726 (1922) (quoting Section 19, p. 35, UNDERHILL ON CRIMINAL EVIDENCE).[4] In 1990, we restated the fundamental nature of the presumption of innocence and set out our requirement that a challenge to this presumption calls for close judicial scrutiny.

> The presumption of innocence is not articulated in the Constitution of the United States; however, it is a basic component of a fair trial and the right to a fair trial is a fundamental liberty secured by the fourteenth amendment. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Consequently, courts must be vigilant

---

[4] See also, *Smith v. State*, 205 Ark. 1075, 1080-81, 172 S.W.2d 248, 250-51 (1943); *Dickson & Johnson v. State*, 197 Ark. 1161, 1174, 127 S.W.2d 126, 132 (1939); *Kindle v. State*, 174 Ark. 827, 297 S.W. 827 (1927); *Hays v. State*, 169 Ark. 1173, 278 S.W. 15 (1925); *Cranford v. State*, 156 Ark. 39, 245 S.W. 189 (1922); *Monk v. State*, 130 Ark. 358, 197 S.W. 580 (1917); *Lavender v. Hudgens*, 32 Ark. 763, 772 (1878).

in guarding against dilution of the presumption of innocence so that guilt will be established beyond a reasonable doubt by probative evidence. Deleterious effects on fundamental rights call for close judicial scrutiny. *Id.* at 504. Factors which might affect a juror's judgment, however, cannot always be avoided. *Id.* at 505.

*Terry v. State*, 303 Ark. 270, 273, 796 S.W.2d 332, 334 (1990). In *Terry* the conduct of the defendant required his removal from the courtroom in spite of his right to confront the witnesses against him; however, in a case where a prosecutor clearly shifts the burden of proof, the court can avoid depriving a defendant of the presumption of innocence by intervening to correct the misstatement of the law.

The failure to provide a criminal defendant with a jury trial is an error so serious that the circuit court has an obligation to intervene, and this court may consider the issue on appeal without an objection below. *Calnan, supra; Winkle, supra; Grinning, supra.* Likewise, today we conclude that failure to secure the companion rights of the presumption of innocence and the State's burden of proof beyond a reasonable doubt is an error so serious that the circuit court should intervene, and we will consider the issue on appeal even without a contemporaneous objection. This conclusion is consistent with the circuit court's proper role in voir dire, which is to direct the process and insure that no undue advantage is gained. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998). "Since attorneys sometimes tend to take over the voir dire process and confuse the jurors, the judge may have to step in, especially in death cases, after the questioning to insure fairness by clarifying answers." *Id.* at 162, 974 S.W.2d at 446.[5]

---

[5] The dissent bases its argument against the application of the third *Wicks* exception in this case on a comment made by the prosecutor in closing arguments concerning the presumption of innocence, *Bowen v. State*, 322 Ark. 483, 508, 911 S.W.2d 555, 567 (1995) ("Perhaps most objectionable was the Prosecutor's remark that the presumption of innocence no longer applied to Mr. Bowen due to the strong evidence of his guilt."). The dissent correctly notes that, while objectionable, we did not find that this comment, by itself, required the court to intervene without an objection. *Id.* First, the dissent confuses the principle with the actual words uttered by the prosecutor. In *Bowen*, as here, we determined that the prosecutor's comments were not so flagrant as to require the court to intervene. However, the dissent surely is not suggesting that a circuit judge may sit quietly by while the prosecutor during voir dire incorrectly tells the jury that the mere filing of a

██ ██ The burden of proof, either the State's or the defendant's, is necessary to preserve a defendant's presumption of innocence and is an issue akin to the right to a jury trial in that both are fundamental rights. Unlike many other constitutional rights, the State's burden of proof beyond a reasonable doubt may not be waived once the accused pleads not guilty. When the State clearly and unequivocally shifts the burden of proof to the defendant during voir dire, without a contemporaneous curative instruction from the circuit court, the defendant's fundamental right may be abridged. The defendant is entitled not only to the jury's consideration of the correct burden of proof in jury-room deliberations, but also when the jury is hearing, weighing, and sifting the evidence presented at trial.[6] Therefore, under the third *Wicks* exception, we will consider appellant's argument that the prosecutor shifted the burden of proof during voir dire.

### Prosecutor's Comments

Appellant alleges that the prosecutor attempted to shift the burden of proof in the following three ways: (1) his description of the meaning of reasonable doubt was confusing, at best; (2) his statement that conflicting evidence does not constitute reasonable doubt was not a correct statement of the burden of proof; and (3) his statements concerning the burden of proof for the justification of self-defense were incorrect. While the prosecutor's comments were questionable, after a careful reading of the voir dire of the potential jurors, we cannot say that the prosecutor's comments were so flagrantly incorrect as to require reversal; and, as such, the

---

criminal information strips the accused of his or her presumption of innocence. Second, the improper comments in *Bowen* were made during closing arguments, which is immediately after the court gives the jury instructions; whereas, in voir dire, the prosecutor's comments are the first explanation of the law heard by the jury without the benefit of the court's correct statement of the law.

[6] As the opening portions of a criminal trial, voir dire examination of potential jurors and opening remarks by counsel necessarily create the lens through which the jury will view the presentation of testimony and other evidence at trial. Unless the defendant objects contemporaneously or the circuit court intervenes *sua sponte*, a clear misstatement of the law on the burden of proof can result in the evidence being received by a jury tainted by the misstatement.

Moreover, although the court properly instructs the jury on the State's burden of proof prior to closing arguments, the inherent conflict between the court's instruction and the earlier misstatement of the State's burden of proof necessarily presents a source of confusion for the jury; and, upon close scrutiny, such a misstatement may play a role in the decision to convict. *State v. Strommen*, 648 N.W.2d 681 (Minn. 2002).

circuit court did not manifestly abuse its discretion by not intervening on its own to instruct the jury as to the law at that time.

First, appellant argues that the prosecutor's comments concerning the State's burden of proving its case beyond a reasonable doubt, while not completely wrong, could have led to confusion. The prosecutor relied on the Arkansas Model Jury Instructions—Criminal as the basis for his definition and explanation of the concept of proof beyond a reasonable doubt. Thus, the prosecutor's general statements on reasonable doubt were correct statements of the law and do not constitute error.

Second, appellant asserts that the prosecutor incorrectly advanced a theme that conflicting testimony does not mean the State failed to meet its burden of proof, and conflicting testimony does not constitute reasonable doubt. His statements to the jury were not technically incorrect. Conflicting testimony does not necessarily require a jury to find a reasonable doubt. In fact, we have often stated that the resolution of conflicting testimony is a matter of credibility, and the determination of the credibility of witnesses is a proper matter for the jury as fact-finder. *Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003). While appellant is correct in his statement that conflicting testimony may be considered by a jury as a factor supporting reasonable doubt, a thorough and careful reading of the prosecutor's comments during voir dire does not reveal any comments concerning conflicting testimony that require reversal.

Third, appellant claims that the prosecutor misstated the State's burden of disproving the justification of self-defense and misstated appellant's burden of raising the self-defense justification. We begin our analysis of this issue by reviewing the burden of proof for both the defendant and the State where the justification of self-defense is raised in a criminal case. The defendant's burden of proof was clearly stated in *Doles v. State*, 275 Ark. 448, 631 S.W.2d 281 (1982): "Justification is not an affirmative defense which must be pled, but becomes a defense when *any evidence tending to support its existence* is offered to support it." *Id.* at 450, 631 S.W.2d at 282 (emphasis added). It does not matter whether the evidence of self-defense comes from the defense's case or the prosecution's case. *Peals v. State*, 266 Ark. 410, 584 S.W.2d 1 (1979). According to the Arkansas Model Jury Instruc-

tions—Criminal, the defendant's burden of proof is merely to raise a reasonable doubt. AMI Crim. 2d 705.

 The State's burden of proof is equally clear: "Because justification is not an affirmative defense, the State has the burden of negating the defense once it is put in issue." *Humphrey v. State*, 332 Ark. 398, 408, 966 S.W.2d 213, 218 (1998). By statute, a justification, such as self-defense, is considered an element of the offense, and once raised, must be disproved by the prosecution beyond a reasonable doubt. Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2001); *see also* Comment to AMI Crim. 2d 705 ("[T]he prosecution has the burden to prove as an element of its case the negation of any defense beyond a reasonable doubt."). If the prosecutor tells the jury during voir dire that the defendant's burden is greater than it is, or if the prosecutor tells the jury during voir dire that the State's burden of disproving self-defense is less than it is, then the prosecutor has attempted to shift the burden of proof.

 In this case, the prosecutor stated that appellant had the burden of raising a reasonable doubt. However, he also described appellant's burden as "a little bit similar to the way the State has to prove its case. You know, I have to prove my case beyond a reasonable doubt. And [appellant] likewise, has to raise a reasonable doubt; that is, prove it. . . ." The State's burden is to *prove* beyond a reasonable doubt; whereas, appellant's burden is merely to *raise* a reasonable doubt, the exact opposite of the State's burden. While not a flagrant shift, the prosecutor's statements represent a subtle attempt to shift the burden of proof by equating appellant's burden of proof with the State's burden. Although appellant's counsel did not object, he did counter the prosecutor's statements with his own explanation of his burden to raise a reasonable doubt by way of asserting self-defense. Appellant's counsel explained to the potential jurors that the prosecutor "was correct in his brief description of the burden that is on the Defendant in raising a defense of self-defense." Appellant's counsel repeatedly told the potential jurors that he need only raise a reasonable doubt. For example:

DEFENSE COUNSEL: Now, you remember, it's the State's case to prove. I mean, we don't have to prove self-defense. All we got to do is

> raise a reasonable doubt. . . . [I]f we succeed in raising a reasonable doubt, would you find him not guilty of all charges?
>
> POTENTIAL JUROR: Uh-huh.

Therefore, between the prosecutor and defense counsel, the potential jurors were correctly instructed on appellant's burden to raise a reasonable doubt when asserting self-defense. We, therefore find no error.

The issue of the prosecutor's statements concerning the State's burden of proof is a much closer issue. On at least five occasions, the prosecutor told the potential jurors that the State did not have to disprove that appellant acted in self-defense, for example: "[I]t is [appellant's] job, his burden, to raise a reasonable doubt in your mind that self-defense exists. It is not the State's burden to prove that it doesn't. All right? To go in and prove the negative, to prove that it doesn't exist." Again, the prosecutor stated "[i]t's not my duty to show that it didn't exist," and he also stated, "would you still put that burden on me and make me prove that he didn't act in self-defense . . . ?" Finally, he stated, "That's not the State's burden, it's not my duty to show that [self-defense] didn't exist. . . . It's his burden to show or raise a reasonable doubt as to whether he was acting in self-defense."

█ Under certain circumstances, the prosecutor's statements of the State's burden to disprove self-defense would be correct statements of the State's burden of proof, but under other circumstances they would be incorrect. Until some evidence tending to support the justification of self-defense is offered, in either the State's case or the defendant's case, the State has no burden of disproving self-defense. However, once "any evidence tending to support [the] existence [of justification] is offered to support it," then the State does indeed have the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. *Doles v. State*, 275 Ark. 448, 450, 631 S.W.2d 281, 282 (1982); *Humphrey v. State, supra*; Ark. Code Ann. § 5-1-102(5)(C); Comment to AMI Crim. 2d 705.

█ We cannot say, from reading the record, that the prosecutor clearly and unequivocally misstated the State's burden of disproving self-defense beyond a reasonable doubt. We, therefore,

defer to the superior position of the circuit court to control and manage the arguments of counsel. We conclude that the circuit court did not manifestly abuse its discretion, and that, in this case, there was no fundamental, structural error in the trial as to require reversal.[7]

## II. Ineffective Assistance of Counsel

■ Appellant alleges ineffective assistance of counsel of such magnitude that a fundamental error occurred requiring this court to address the issue on appeal even though it was not objected to below. "It is well settled that this court will not consider ineffective assistance of counsel as a point on direct appeal unless that issue has been considered by the trial court." *Slocum v. State*, 325 Ark. 38, 40, 924 S.W.2d 237, 238 (1996) (citing *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995)). Furthermore, if the ineffective assistance of counsel "is predicated on counsel's failure to object, then it is the kind of error that should be addressed in a Rule 37 proceeding, not in a direct appeal where the issue is admittedly not preserved for appeal." *Buckley v. State*, 349 Ark. at 69, 76 S.W.3d at 835.

■ Contrary to what appellant alleges in his brief, the refusal of this court to consider his claims of ineffective assistance of counsel does not deny him a fundamental right to have an appellate court review the issue of whether he received the assistance of counsel guaranteed by the Sixth Amendment. That review is available to appellant through the process of postconviction relief in a Rule 37 proceeding. Because the effectiveness of counsel was not objected to or raised to the circuit court in his motion for a new trial, appellant's claims of ineffective assistance of counsel are not preserved for appeal.

---

[7] Appellant also asserts that the prosecutor misstated the relevance of the reasonableness of appellant's belief that deadly force was necessary. A reasonable belief is necessary to the justification of self-defense. AMI Crim. 2d 705; *Humphrey v. State, supra; Jonison v. State*, 317 Ark. 431, 878 S.W.2d 727 (1994). Based on our examination of the record, the prosecutor and defense counsel adequately presented this issue to the potential jurors, and there was no error.

## III. A Jury Organized to Return a Verdict of Death

Under this point, appellant contends that the questions posed by the prosecutor to prospective jurors concerning their ability to sentence the defendant to death in accordance with the law resulted in a jury that was organized to return a verdict of death in contravention of *Witherspoon v. Illinois*, 391 U.S. 510 (1968). As an initial matter, the State correctly points out that appellant did not make a *Witherspoon* objection during voir dire or in his motion for a new trial. Therefore, this issue is not preserved for appeal. *Bader v. State*, 344 Ark. 241, 40 S.W.3d 738; *Christopher v. State*, 340 Ark. 404, 10 S.W.3d 852.

## IV. Proffered Jury Instructions on Justification

The circuit court refused appellant's proffered versions of the AMI Crim. 2d 705 and 706 jury instructions on justification, use of deadly force in defense of a person. Appellant specifically asserts that the instruction to the jury should have included the phrase: "However, he is not required to retreat if he is in his dwelling and was not the original aggressor." AMI Crim. 2d 705. The judge determined that, as a matter of law, appellant was not in his "dwelling" at the time of the killing; therefore, the proffered instructions were not proper.

There is no error in refusing to give a jury instruction where there is no basis in the evidence to support the giving of the instruction. *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002). The phrase appellant sought to include in the jury instruction is a parenthetical in AMI Crim. 2d 705, indicating that its inclusion is optional. The issue here is whether there was a basis in the evidence to support giving the optional portion of the instruction. We have held that the term "dwelling" in the self-defense statute does not include curtilage. *Hopes v. State*, 294 Ark. 319, 742 S.W.2d 561 (1988). The *Hopes* court rejected the assertion that the defendant's porch was a part of his "dwelling" because it was not enclosed. *Id.* Appellant's house was about eighty-five feet from the highway. Pete was shot about 32 feet from the highway, and from a distance of no more than ten feet. Furthermore, according to appellant's own testimony, he left his porch to follow Pete into the driveway. Thus, based on the physi-

cal evidence and appellant's own testimony, he was not in his dwelling at the time he shot Pete. As there was no basis in the evidence to support giving the proffered jury instructions, we affirm the circuit court on this point.

### V. Insufficient Evidence to Support the Jury's Finding of a Statutory Aggravating Circumstance

For his penultimate argument, appellant states that there was insufficient evidence to support a finding of statutory aggravating circumstances, specifically that the murder was committed "in an especially cruel or depraved manner." Ark. Code Ann. § 5-4-604(8)(A) (Supp. 2001). Here, the jury was instructed solely on the statutory aggravating circumstance of cruelty:

> [A] capital murder is committed in an especially cruel manner when, as part of a course of conduct intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, mental anguish, serious physical abuse, or torture is inflicted.
>
> (ii)(a) "Mental anguish" is defined as the victim's uncertainty as to his ultimate fate.

Ark. Code Ann. § 5-4-604(8)(B) (Supp. 2001).

This court recently explained our standard for reviewing a jury's sentencing verdict:

> We will uphold the jury's verdict if there existed substantial evidence for the jury to find beyond a reasonable doubt that one or more aggravating circumstances exist and that they outweighed any mitigating circumstances.
>
> * * *
>
> On review, the jury's judgment will be upheld if, taking the evidence in the light most favorable to the State, a rational trier of fact could find the aggravating circumstance to have existed beyond a reasonable doubt. *Kemp v. State*, 324 Ark. 178, 200, 919 S.W.2d 943, 953-954, cert. denied, 117 S.Ct. 436, 136 L.Ed.2d 334 (1996). *Willett v. State*, 335 Ark. 427, 434, 911 S.W.2d 937 (1998). The balancing of aggravating and mitigating circumstances is properly the duty of the jury.

*Williams v. State*, 338 Ark. 97, 108-09, 991 S.W.2d 565, 570-71 (1999). The record in this case reflects Barbara Snow's testimony

that appellant said he heard Pete moaning after the first shot, and then proceeded to shoot him in the back of the head. According to the State's expert witnesses, Pete would have lived several minutes after the first shot, even though the first shot was fatal. Finally, Randy Busti testified that several seconds passed between the first and second shots.

 Viewed in the light most favorable to the State, the jury could have determined that after the first wound, Pete was uncertain as to his ultimate fate and, as a result, suffered mental anguish. Thus, we conclude there is sufficient evidence to support the jury's finding that the murder was committed in an especially cruel manner.[8]

### VI. Statutory Procedures During the Sentencing Phase

 As his final point, appellant argues that the circuit court erred in imposing the death penalty because the jury failed to strictly follow the statutory procedures and ignored the stipulated mitigating factor of no significant prior criminal history. To impose the death penalty, a jury has the following statutory obligations:

(a) The jury shall impose a sentence of death if it unanimously returns written findings that:

(1) Aggravating circumstances exist beyond a reasonable doubt; and

(2) Aggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist; and

(3) Aggravating circumstances justify a sentence of death beyond a reasonable doubt.

\* \* \*

(c) If the jury does not make all findings required by subsection (a) of this section, the court shall impose a sentence of life imprisonment without parole.

---

[8] As to appellant's alternate claim that the statute is unconstitutionally vague, this court has found that the statutory scheme for invoking the death penalty in Arkansas is constitutional. *Camargo v. State, supra; Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995).

Ark. Code Ann. § 5-4-603(a), (c) (Repl. 1997). As a criminal statute, section 5-4-603 must be strictly construed in favor of the accused. *Carter v. State*, 350 Ark. 229, 85 S.W.3d 914 (2002). In connection with the statutory requirements for the imposition of the death penalty, the Arkansas Model Jury Instructions—Criminal for the punishment phase of a capital murder case include four separate verdict forms: Form 1 — the jury's findings concerning possible aggravating circumstances; Form 2 — the jury's findings concerning possible mitigating circumstances; Form 3 — the jury's weighing of any aggravating or mitigating circumstances; and Form 4 — the jury's sentence of death or life without the possibility of parole. *See* AMI Crim. 2d 1008.

In some cases, we have found no reversible error where certain portions of Form 2 were filled out inconsistently by the jury. *Jones v. State*, 329 Ark. 62, 72, 947 S.W.2d 339, 344 (1997); *Hill v. State*, 289 Ark. 387 713 S.W.2d 233 (1986). In one case, we have found error where the jury did not clearly indicate on Form 3 that the aggravating circumstances justify a sentence of death beyond a reasonable doubt. *Camargo v. State, supra.*

In the instant case, the supplemental record includes Forms 1 through 4. Because the State stipulated at trial that appellant had no significant criminal history, the circuit court indicated orally that section "D" of Form 2 would be omitted. That particular section is applicable only if *no* evidence of a mitigating circumstance was presented. The jury here checked various boxes on Forms 1, 3, and 4, but no boxes are checked on Form 2. The jury foreman signed Forms 1, 3, and 4, but there is no signature on Form 2. The circuit clerk marked Forms 1, 3, and 4 as received, but the clerk did not mark Form 2 as received. In fact, the Form 2 included in the supplemental record has no marks on it at all. Thus, we are presented with no proof that Form 2 was ever presented to the jury or received by the circuit clerk. There is no written proof that the jury considered any mitigating circumstances. Section 5-4-603 requires "written findings" that "[a]ggravating circumstances outweigh beyond a reasonable doubt all mitigating circumstances found to exist." Without a signed and filed Form 2, this court is unable to say that the jury considered any possible mitigating circumstances, much less that it concluded beyond a reasonable doubt that the only aggravating

circumstance outweighed any mitigating circumstances found to exist. Accordingly, we reverse and remand for resentencing.

Affirmed in part; reversed and remanded in part.

GLAZE AND HANNAH, JJ., concur.

THORNTON, J., concurs in part and dissents in part.

TOM GLAZE, Justice, concurring. I concur. However, while I might agree with the passages, holdings, and rationale in the many cases cited in the majority opinion, they are unnecessary to decide this case. In sum, I do agree that the so-called third *Wicks* exception is inapplicable, but I do so for a different and simpler reason.

This court has recognized that the four *Wicks* exceptions are "extremely narrow and strictly guarded." *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464 (1997); *see also Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). As noted by the majority, the third exception has only been applied by this court in cases involving the constitutional right to jury trial. *See, e.g., Calnan v. State*, 310 Ark. 744, 841 S.W.2d 593 (1992); *Winkle v. State*, 310 Ark 713, 841 S.W.2d 589 (1992).

The court in *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), discussed what should be covered by the third *Wicks* exception. In *Bowen*, the prosecutor made a remark, without objection, during closing argument that the presumption of innocence no longer applied to the defendant due to the strong evidence of his guilt. This court held that "[w]hile these arguments could be characterized as improper, they are not of the sort requiring the trial court to step in absent an objection." *Bowen*, 322 Ark. at 508. The court had held prior to *Bowen* that the presumption of innocence is a "fundamental right in the American system antedating any constitution and an essential of due process of law." *Williams v. State*, 259 Ark. 667, 535 S.W.2d 842 (1976). Therefore, this court found in *Bowen* that the remarks made regarding presumption of innocence, a fundamental right, did not rise to the level of flagrant and highly prejudicial error that is encompassed by the third *Wicks* exception. *Bowen*, 322 Ark at 508.

In *Sasser v. State*, 338 Ark. 375, 993 S.W.2d 991 (1999), this court cited to a United States Supreme Court case, *Sullivan v. Lou-*

*isiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed. 182 (1993), where the Supreme Court held that an erroneous "reasonable doubt" instruction was structural error. However, as noted by the Supreme Court in *Sullivan* and this court in *Sasser*, in a case where the jury *convicts according to an erroneous instruction* about the State's burden of proof, there is a structural error because there has been no finding of guilt as required by the Sixth Amendment. Therefore, the cases where this Court has discussed finding a "fundamental" or "structural error," such as what is contemplated in the third *Wicks* exceptions, are cases involving the right to jury trial, and cases where a jury convicts due to an *erroneous instruction*. Both involve situations where the legal process has been corrupted *and there is no opportunity to cure it*. That is not the situation in the present case. Although the right to a burden of proof beyond a reasonable doubt is a fundamental right, such clearly is not structural error when the error has been cured.

In the case of *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998), this court affirmed a denial of a motion for mistrial where the trial court made "incomplete and possibly misleading" statements of law to the venire. This court held that "[e]ven if the trial court made an incorrect statement of the law during voir dire, the court cured any error by instructing the jury fully and correctly on the applicable law at the close of the trial[.]" *Willis*, 344 Ark. at 424. Surely if, in a situation where improper statements of law made by the trial judge during voir dire were cured by a correct instruction to the jury prior to deliberation, improper statements of the law made by a prosecutor during voir dire would be cured by a correct instruction as well.

The jury is presumed to have followed the court's instructions. *Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993). If the prosecutor's statements during voir dire had been wrong, they were cured by the correct instruction, which the law presumes the jury followed.

For the reasons above, I must respectfully concur.

JIM HANNAH, Justice, concurring. I agree that Appellant Randy Anderson has sufficiently raised an argument under the third exception found in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), even though he does not specifically mention

that case in his brief. I further agree with the majority's conclusion that no reversible error occurred on this point. However, I cannot walk down the path that the majority has taken to arrive at this conclusion. In my opinion, the majority makes difficult an issue that is really quite simple.

Appellant argues that the trial court abused its discretion in allowing the prosecutor to make incorrect statements of the law regarding self-defense, which he claims resulted in the burden of proof being shifted to the defense. A review of the prosecutor's statements is all that is necessary to determine that Appellant's argument has no merit. During *voir dire* of the first panel of six potential jurors, the prosecutor made the following statement:

> There's going to be a, an issue raised, I anticipate, about self-defense. And I think we're all familiar with that, we know what that concept means basically. You know, that someone — without getting the instruction out that's very meticulously defined — but generally it's someone, you know, is, you can use deadly physical force to defend yourself under certain circumstances. And no one, including the State of Arkansas, disputes otherwise. That's the law and it's long been the law in this state and in most others.
>
> Further, the proof on it; that is, how it has to be proved, is a little bit similar to the way the State has to prove its case. You know, I have to prove my case beyond a reasonable doubt. And Mr. Anderson, likewise, has to raise a reasonable doubt; that is, prove it, whatever proof he may put on, if he does, concerning the matter, has to raise a reasonable doubt about self-defense.
>
> Does anybody have any difficulty in following that instruction that it's Mr. Anderson's burden to raise a reasonable doubt if he's going to rely on the concept of self-defense?

During *voir dire* of that same panel, defense counsel made the following statements to a prospective juror:

> He's not required to so-call prove his innocence to a certain degree any more than to raise a reasonable doubt. That's all he's required to do in presenting this defense. Could — If he raises a reasonable doubt in the presentation of certain evidence or the listing of certain evidence, whether it's on, even if it comes out by accident on the part of, accident on the, direct examination of the Prosecutor or cross examination of Defense Attorney, would it make any difference who really brought it out in the, in the evidence —

The prosecutor did not mention the burden of proof regarding self-defense during his *voir dire* of the second panel of potential jurors. However, defense counsel asked the following question to a prospective juror:

> Now, do you understand — All right. If you are instructed that the Defendant, in asserting the defense of self-defense, is only required to raise a reasonable doubt in your mind, would that be sufficient with you, if you find a reasonable doubt, even though it's not proved beyond a, by a preponderance of the evidence or greater weight of the evidence?

During *voir dire* of the third panel, the prosecutor made the following statements to a prospective juror:

> Let me say something about the proof on self-defense. It is a defense. I prove — I must prove the State's case beyond a reasonable doubt. Mr. Anderson is the one that claims, I anticipate, self-defense was necessary. And I think after you hear the proof that you'll conclude that that is not the case and that it was more —

At that point, defense counsel objected that the prosecutor was prematurely arguing his case, and the trial court sustained the objection. Thereafter, the prosecutor continued:

> The burden is on Randy Anderson to raise a reasonable doubt about whether self-defense existed; not on the State of Arkansas. He makes this claim of self-defense. His responsibility to raise a reasonable doubt that it existed.

During defense counsel's *voir dire* of the same prospective juror, the following colloquy occurred:

> [DEFENSE COUNSEL]: [I]f you're selected to serve on this jury and the State fails to prove each element of every charge of capital murder, even the lesser included offenses —
>
> PROSPECTIVE JUROR: Uh-huh.
>
> [DEFENSE COUNSEL]: — beyond a reasonable doubt, could you find my client not guilty of all charges?
>
> PROSPECTIVE JUROR: I could find not guilty if he proves that he didn't do the crime.
>
> [DEFENSE COUNSEL]: Okay. I know what you mean to say. If I prove. Now, you remember, it's the State's case to prove. I mean, we don't have to prove self-defense. All we got to do is

raise a reasonable doubt. Could you agree with that? You'd follow that law?

PROSPECTIVE JUROR: Yes, sir.

[DEFENSE COUNSEL]: And if we raise that reasonable doubt, you could find him not guilty if he's, if you find that he had the right to use deadly physical force —

PROSPECTIVE JUROR: Yes, sir.

[DEFENSE COUNSEL]: — under the circumstances?

PROSPECTIVE JUROR: Under the circumstances.

During *voir dire* of the fourth panel, the prosecutor made the following statements:

> There is a defense that the law allows called justification; that is, you're justified in doing what you're doing.
>
> One that you're going to hear about in this case is a claim of self-defense. Mr. Anderson, Mr. Randy Anderson, I understand, is going to claim that he was acting in either defense of himself, his home, or someone in the home, or all three, some combination thereof.
>
> First thing the Judge is going to instruct you about self-defense is that it is Mr. Anderson's job, his burden, to raise a reasonable doubt in your mind that self-defense exists. It is not the State's burden to prove that it doesn't. All right? To go in and prove the negative, to prove that it doesn't exist. It's his job to raise the doubt.

A little further into his *voir dire*, the prosecutor stated:

> That is the defense that is going to be raised and I ask you to apply the burden that you said you would. That the burden is not on me to disprove it, but the burden is on the Defense to raise a reasonable doubt. It's for them to show that these things occurred and raise a reasonable doubt in your mind.

Defense counsel did not address the issue to the fourth panel.

During *voir dire* of the fifth jury panel, defense counsel asked the prospective jurors if they understood the difference between the prosecutor's burden of proof and the burden the defense has as to self-defense. Counsel explained:

> You'll be instructed that the Defendant in asserting the defense of right to use deadly physical force is not required, he's only required — the words of the instruction — only required to

> raise a reasonable doubt in your mind of the guilt of, of his guilt of the charge. Okay?
>
> . . . .
>
> He's not required to prove self-defense by even a greater weight of the evidence or a preponderance of the evidence, much less, you know, beyond reasonable doubt. He's only required to raise a reasonable doubt . . . in you mind.

The prosecutor did not directly address the issue to the fifth panel.

During the sixth panel's *voir dire*, the prosecutor made the following statements:

> As you've gathered from the questions you've heard, it may, it may occur that Mr. Anderson will plead self-defense or defense of others or defense of premises or some combination of those three.
> Self-defense is a, is sometimes called justification. The person is justified in doing what they're doing. But it's something that the person will show. That is not the State's burden, it's not my duty to show that it didn't exist, to prove the negligence [sic], that he was not that way. It's his burden to show or raise a reasonable doubt as to whether he was acting in self-defense.

Finally, during *voir dire* of the potential alternate jurors, defense counsel stated:

> Now, with that instruction, you will be instructed that a party may use deadly physical force to defend premises and himself under certain circumstances and he's only required in that defense to raise a reasonable doubt in your minds. In which event, you would find him what? Not guilty?

The foregoing statements by the prosecutor do not rise to the level of the type of plain error encompassed by the third exception in *Wicks*, 270 Ark. 781, 606 S.W.2d 366. They are not flagrant or highly prejudicial such that the trial court was required to step in on its own and instruct the jury.

The majority does not see this issue so clearly, choosing first to determine whether, hypothetically, any prosecutorial misstatements made during *voir dire* concerning the burden of proof rise to the level of the third *Wicks* exception. Analysis of this hypothetical issue occupies a considerable part of the majority opinion, but it amounts to nothing more than pure obiter dicta. In analyzing

the issue as it does, the majority departs from the way that this court has addressed this type of issue in the past.

For example, in *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555, *cert. denied*, 517 U.S. 1226 (1996), the appellant challenged statements made by the prosecutor during closing argument. No objection was made by defense counsel at the time, and this court held: "Absent contemporaneous objection at the trial, we will not review the prosecution's closing argument unless it was so flagrantly improper and so highly prejudicial in character as to have made it the duty of the Court on its own motion to instruct the jury not to consider it." *Id.* at 508, 911 S.W.2d at 567 (citing *Wicks*, 270 Ark. 781, 606 S.W.2d 366, and *Wilson v. State*, 126 Ark. 354, 190 S.W. 441 (1916)).

Similarly, in *Vaughn v. State*, 338 Ark. 220, 992 S.W.2d 785 (1999), this court looked first to the offensive remarks, which concerned allegedly improper cross-examination by the prosecutor, and then concluded that the appellant had failed to demonstrate that the remarks were "so flagrant and so highly prejudicial in character as to make it the duty of the court, on its own motion, to have instructed the jury not to consider the same, without the necessity of an objection by appellant." *Id.* at 227, 992 S.W.2d at 789.

More recently, in *Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003), appointed counsel argued that the trial court had erred in failing to remove a juror for cause, even though trial counsel conceded that there were no grounds for cause. Because that case involved an automatic appeal of a death sentence, this court entertained the argument, but only as to the particular facts and circumstances of that case. This court held that the trial court did not commit error, plain or otherwise, by declining to remove the juror for cause.

Given our previous method of analyzing issues raised under the third *Wicks* exception, it escapes me why this court is taking the path that it has chosen in this case. In my opinion, it is unnecessary to analyze, at the outset, whether a prosecutor's misstatements of law concerning the burden of proof rise to the level of a *Wicks* violation. Only the particular remarks made *in this case* should be examined. Because the majority goes beyond this nar-

row determination, I concur in the ultimate conclusion, but I cannot join the dicta.

RAY THORNTON, Justice, concurring in part and dissenting in part. I agree completely with the majority's holding that this matter must be reversed and remanded to the trial court for resentencing because there was no proof that the jury considered any mitigating circumstances as required by Ark. Code Ann. § 5-4-603 (Repl. 1997). However, I cannot agree that the prosecutor's misstatements of the law relating to the shifting of the burden of proof from the State to the defendant did not require immediate action by the trial court to correct this error. I also believe that the shifting of the burden of proof was a serious error that we have the duty to address under the third exception outlined in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), where we stated:

> A third exception . . . relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial.

*Id.*

In the United States Supreme Court decision of *Mullaney v. Wilbur*, 421 U.S. 684 (1975), the Court held that the Due Process Clause of the 14th Amendment requires that the prosecution prove beyond a reasonable doubt every element of the crime charged. *Id.* The Court invalidated a Maine homicide statute that implied malice aforethought in any criminal prosecution of an intentional homicide unless the defendant established by the preponderance of the evidence that the homicide was committed in the heat of passion. In commenting on the *Mullaney* holding in a subsequent case, *Patterson v. New York*, 432 U.S. 197 (1977), the Supreme Court said:

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . . Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

*Id. See also Francis v. Franklin*, 471 U.S. 307 (1985) (stating due process requires the State to bear the "burden of persuasion beyond a reasonable doubt of every essential element of a crime"). *See generally* 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 77, at p. 367 (2d ed.1994) (stating "that the prosecutor has the obligation to prove each element of the offense beyond a reasonable doubt" and "that the accused bears no proof burden whatsoever with respect to any element of the crime").

Based upon this well-established precedent, I would hold that the trial court erred by failing to correct the prosecutor's misstatements that shifted the burden of proof to appellant. Here, the prosecutor told the jury, "[I]t is [appellant's] job, his burden to raise a reasonable doubt in your mind that self-defense exists. It is not the State's burden to prove that it doesn't. All right? To go in and prove the negative, to prove that it doesn't exist." The prosecutor asked a prospective juror, "[W]ould you still put that burden on me and make me prove that [appellant] didn't act in self-defense . . . ?"

These prosecutorial misstatements show that the State sought to shift the burden of proof away from the State to appellant. We have said that the burden on the defendant to prove an affirmative defense does not arise until the State has met its burden of proof as to the elements of the offense. *Moss v. State*, 280 Ark. 27, 655 S.W.2d 375 (1983). The defendant must then *prove an affirmative defense* by a *preponderance of the evidence*. Ark. Code Ann. § 5-1-111 (Repl. 1997) (emphasis added). While there are times during *voir dire* that the prosecutor correctly expressed the State's burden of proof, I believe that the misstatements to the jury were not cured by the contrary statements by the prosecutor, and that the failure of the trial court to intervene led to confusion and an unfair result.

I believe that these misstatements by the prosecutor constitute a "serious error" contemplated by the third *Wicks* exception and should have been corrected by the trial court by means of an admonishment to the jury or by a new trial. For that reason, I would reverse and remand for a new trial.